## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1) NORTHUMBERLAND COUNTY RETIREMENT SYSTEM and 2) OKLAHOMA LAW ENFORCEMENT RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>    vs.<br><br>1) GMX RESOURCES INC.,<br>2) KEN L. KENWORTHY, JR.,<br>3) JAMES A. MERRILL,<br>4) JEFFERIES & COMPANY, INC.,<br>5) HOWARD WEIL INCORPORATED,<br>6) MORGAN KEEGAN & COMPANY, INC.,<br>7) CAPITAL ONE SOUTHCOAST, INC.,<br>8) COLLINS STEWART LLC,<br>9) PRITCHARD CAPITAL PARTNERS, LLC,<br>10) TUDOR, PICKERING, HOLT & CO. SECURITIES, INC.,<br>11) MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED,<br>12) BBVA SECURITIES INC.,<br>13) FORTIS SECURITIES LLC,<br>14) WEDBUSH MORGAN SECURITIES INC.,<br>15) CREDIT SUISSE SECURITIES (USA) LLC and<br>16) SMITH CARNEY & CO., P.C.,<br>                Defendants. | Civil Action No. 11-cv-00520-D<br><br><u>CLASS ACTION</u> |

### BRIEF IN SUPPORT OF NORTHUMBERLAND COUNTY RETIREMENT SYSTEM AND OKLAHOMA LAW ENFORCEMENT RETIREMENT SYSTEM'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND <u>APPROVAL OF LEAD PLAINTIFF'S SELECTION OF COUNSEL</u>

Northumberland County Retirement System ("Northumberland") and Oklahoma Law Enforcement Retirement System ("OLERS") (collectively, "Northumberland-OLERS") respectfully submit this brief in support of their Motion for: (i) appointment as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 77z-1(a)(3)(B); (ii) approval of their selection of Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") and Nix Patterson & Roach, LLP ("Nix Patterson") as Co-Lead Counsel; and (iii) approval of their selection of Nelson, Roselius, Terry & Morton ("Nelson Roselius") as Liaison Counsel.

## I.   PRELIMINARY STATEMENT

On March 10, 2011, Northumberland-OLERS filed the above-captioned action (the "Action") on behalf of all persons who purchased or otherwise acquired GMX Resources Inc. ("GMX" or the "Company") common stock pursuant or traceable to the Company's July 17, 2008, May 13, 2009, and October 22, 2009 stock offerings (collectively, the "Offerings"). The Action was originally filed in the District Court for Oklahoma County, Oklahoma and alleges violations of Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act") against GMX, certain of GMX's officers, the underwriters of the Offerings, and GMX's registered public accounting firm (collectively, "Defendants").

On May 12, 2011, Defendants removed the Action to the United States District Court for the Western District of Oklahoma. *See* Dkt. No. 1. Northumberland-OLERS subsequently moved to remand the Action to state court on June 10, 2011. *See* Dkt. No. 54. On November 16, 2011, the Court denied the motion to remand and ordered Northumberland-OLERS to issue a PSLRA notice within 20 days of the Court's order. *See*

Dkt. No. 66 (requiring plaintiffs to publish a PSLRA notice within 20 days of the Court's order denying remand) (hereinafter the "Scheduling Order"); Dkt. No. 69 (denying remand). The Scheduling Order also set the deadline to file motions for appointment as lead plaintiff at 60 days from the date of publication of the PSLRA notice. *See* Dkt. No. 66.[1]

As a federal class action lawsuit asserting violations under the federal securities laws, Northumberland-OLERS' action is subject to the PSLRA. *See* 15 U.S.C. § 77z-1(a). The PSLRA sets forth a specific process for the selection of lead plaintiff and lead counsel. *See* 15 U.S.C. § 77z-1(a)(3). Pursuant to the PSLRA, courts must appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 77z-1(a)(3)(B)(iii); *see also In re SemGroup Energy Partners, L.P., Sec. Litig.*, No. 08-cv-425-GKF, 2008 WL 4826318, at *1 (N.D. Okla. Oct. 27, 2008) (discussing the PSLRA's process for selecting a lead plaintiff). In that regard, the presumptively most adequate plaintiff is the movant or movant group asserting the "largest financial interest" in the relief sought by the Class and who are also able to make a *prima facie* showing of adequacy and typicality under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *See id.*

Northumberland-OLERS respectfully submit that they should be selected as Lead Plaintiff because, to the best of their knowledge, they have the largest financial interest in the

---

[1]    Pursuant to the Scheduling Order, Counsel for Northumberland-OLERS published notice of the above-captioned action on December 5, 2011. *See* Declaration of Jason E. Roselius in Support of Northumberland County Retirement System and Oklahoma Law Enforcement Retirement System's Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Counsel ("Roselius Decl."), Ex. A.

relief sought by the class and are otherwise adequate and typical under Rule 23. *See* Roselius Decl., Exs. B-C;[2] *see also Friedman v. Quest Energy Ptnrs. LP*, 261 F.R.D. 607, 609-10 (W.D. Okla. 2009) (discussing the PSLRA's process for selecting a lead plaintiff); *Id.* at 612 ("typicality and adequacy are the only relevant prerequisites to lead plaintiff selection under the PSLRA") (citation omitted). Among other things, Northumberland-OLERS remain the only plaintiffs to investigate the class' claims and file a complaint on behalf of all class members. Further, the appointment of Northumberland-OLERS also fulfills a critical goal of the PSLRA—encouraging participation by sophisticated institutional investors—and ensures that the class' claims will be zealously prosecuted by committed plaintiffs. *See In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 99 (S.D.N.Y. 2005) ("the PSLRA was designed to favor institutional investors").

Finally, in accordance with the PSLRA, Northumberland-OLERS's selection of Co-Lead Counsel and Liaison Counsel should be approved. *See* § III.C, *infra*; *Quest*, 261 F.R.D. at 615 ("A court should not disturb the lead plaintiff's choice of counsel unless necessary to 'protect the interests of the class.'").

---

[2]     Although the complaint does not plead a "class period," for purposes of setting forth "all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint," 15 U.S.C. §77z-1(a)(2)(A)(iv), Northumberland-OLERS' PSLRA certifications indentifies all trades made pursuant to or traceable to the Offerings through March 16, 2010 (the "Class Period" transactions). *See* Roselius Decl., Ex. B. Northumberland-OLERS' calculation of losses includes all transactions set forth in their certifications as well as all sales netted against Class Period transactions. *See id.*, Ex. C.

## II.     FACTUAL BACKGROUND

GMX is an Oklahoma-based independent oil and natural gas exploration and production company.  During the relevant time period, the Company held itself out to be a "pure play" exploration and production company because it devoted materially all of its business to the development and production of oil and natural gas in one core area – the Haynesville/Bossier Formation and the Cotton Valley Sand Formation in the East Texas Basin.  GMX has since expanded into additional regions in Montana, North Dakota, and Wyoming.

Between July 2008 and October 2009 the Company completed three equity offerings of common stock which collectively raised approximately $335 million in proceeds:

- on or about July 17, 2008, the Company sold 2,300,000 shares of GMX common stock to investors at a price of $70.50 per share, for gross proceeds of $162,150,000;

- on or about May 13, 2009, the Company sold 5,750,000 shares of GMX common stock to investors at a price of $12.00 per share, for gross proceeds of $69,000,000; and

- on or about October 22, 2009, the Company sold 6,950,000 shares of GMX common stock to investors at a price of $15.00 per share, for gross proceeds of $104,250,000.

The offering materials for each of the Offerings incorporated by reference various Company financial statements between 2007 and 2008 and each included an attestation that the Company had evaluated its internal controls and determined that it maintained adequate internal controls.

On March 11, 2010, the Company disclosed that its full year 2008 and quarterly 2009 financial statements were incorrect and needed to be restated.  Specifically, the Company

revealed that restatement was necessary to correct "for the method used to record its previous full cost pool impairment charges, other impairment charges and related deferred income taxes that adjusts the Company's earnings under Generally Accepted Accounting Principles (GAAP) for the year ended 2008 and for the first three quarters of 2009." As a result of these "adjustments," the Company's restated net loss for fiscal year 2008 was $124.6 million as compared to the originally reported $81.7 million. Additionally, the Company reported a net loss of over $185 million for fiscal year 2009.

On March 16, 2010, GMX further revealed in its 2009 Annual Report (filed with the Securities and Exchange Commission on Form 10-K) that the Company "identified a material weakness in [GMX's] internal control over financial reporting due to management's improper application of generally accepted accounting principles resulting in corrections to [GMX's] previously reported December 31, 2008 consolidated financial statements and the first three quarters of 2009." The Company also disclosed that "[m]anagement failed to timely detect and correct errors…." These disclosures effectively admitted that the Offering materials contained materially untrue statements with respect to the accuracy and integrity of the Company's financial statements as well as the adequacy of the Company's internal controls.

## III.   ARGUMENT

### A.   The PSLRA's Lead Plaintiff Provisions

The PSLRA establishes the procedures for selecting a lead plaintiff in class action lawsuits alleging violations under the federal securities laws. *See* 15 U.S.C. §77z-1(a).

First, the plaintiff who files the initial action must publish a notice to the class within twenty days, informing class members of their right to file a motion for appointment as lead plaintiff. *See* 15 U.S.C. §77z-1(a)(3)(A)(i). Second, within sixty days of the publication of notice, any person who is a member of the proposed class may apply to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. *See* 15 U.S.C. §77z-1(a)(3)(A)(i)(II). Third, the PSLRA provides that within ninety days after publication of notice, courts are to consider any motion made by a class member and appoint as lead plaintiff the member or members of the class that the court determines to be most capable of adequately representing the interests of class members. *See* 15 U.S.C. §77z-1(a)(3)(B)(i). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [Act] is the person or group of persons that –
>
> (aa)    has either filed the complaint or made a motion in response to a notice…;
>
> (bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §77z-1(a)(3)(B)(iii)(I); *see also Quest*, 261 F.R.D. at 610.

Here, pursuant to the Scheduling Order and following the Court's November 16, 2011 Order denying remand, Dkt. No. 69, notice of *Northumberland County Retirement System, et al., v. GMX Resources Inc., et al.*, Case No. 11-cv-00520-D (W.D. Okla. removed May 12, 2011) was published on *PR Newswire* on December 5, 2011. *See* Roselius Decl., Ex. A. The Scheduling Order confirms that motions for appointment as lead plaintiff must be filed within 60 days of the PSLRA being published. *See* Dkt. No. 66. Thus, the time period in

which class members may move to be appointed lead plaintiff in this case expires on February 3, 2012. *See* 15 U.S.C. §77z-1(a); *see also* Dkt. No. 66. Pursuant to the PSLRA's provisions, and within the requisite time frame after publication of the required notice, Northumberland-OLERS timely move this Court to be appointed Lead Plaintiff on behalf of all members of the class. In addition, Northumberland-OLERS have selected and retained counsel experienced in the prosecution of securities class actions to represent the class. *See* Roselius Decl., Exs. D-F. Accordingly, Northumberland-OLERS satisfy the PSLRA's filing requirements for seeking appointment as lead plaintiff.

### B. Northumberland-OLERS are the "Most Adequate Plaintiff"

#### 1. Northumberland-OLERS have the Largest Financial Interest in the Relief Sought by the Class

Northumberland-OLERS suffered losses of approximately $187,261 in connection with their purchases of GMX common stock pursuant or traceable to the Offerings. *See* Roselius Decl., Exs. B-C. To the best of their knowledge, Northumberland-OLERS's losses represent the largest financial interest in the relief sought by the class. *See Quest*, 261 F.R.D. at 612.

#### 2. Northumberland-OLERS Satisfy Rule 23

In addition to possessing the largest financial interest in the relief sought by the class, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §77z-1(a)(3)(B)(iii)(I)(cc). Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are

questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."   Although Rule 23 consists of four requirements, at this stage, a movant need only make a showing that it satisfies the typicality and adequacy requirements of Rule 23.  *See Quest*, 261 F.R.D. at 612 ("typicality and adequacy are the only relevant prerequisites to lead plaintiff selection under the PSLRA").

### a.    Northumberland-OLERS are Typical

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class.   Specifically, "typicality exists where 'the claims . . . of the representative parties' are 'typical of the claims . . . of the class.'"  *Quest*, 261 F.R.D. at 612. Moreover, "[t]ypicality does not require that every class member's claim be identical to those of the representative plaintiffs."  *Id.* (citation omitted).

Here, Northumberland-OLERS are typical because, just like all other class members asserting claims, they purchased or otherwise acquired GMX securities pursuant or traceable to the Company's Offerings which were sold to investors based on documents containing untrue statements of material fact.  *See id.* at 613.  In fact, Northumberland-OLERS filed the first (and only) action setting forth the theory of liability in this case.   Thus, Northumberland-OLERS's claims are typical of other class members' claims.

### b.    Northumberland-OLERS are Adequate

The adequacy requirement of Rule 23(a)(4) is met if the representative party makes a showing that it will "fairly and adequately protect the interests of the class."  Specifically,

"'[a]dequacy, for purposes of the lead plaintiff determination, is contingent upon both the existence of common interests between the proposed lead plaintiffs and the class, and a willingness on the part of the proposed lead plaintiff to vigorously prosecute the action.'" *Quest*, 261 F.R.D. at 610 (citation omitted).

Northumberland-OLERS have selected highly qualified firms with significant experience prosecuting class action lawsuits.  *See* § III.C, *infra*.  Further, there are no conflicts between Northumberland-OLERS and the class as each seek to recover losses caused by the defendants' false and misleading statements.  Northumberland-OLERS, consisting of two sophisticated institutional investors that suffered substantial losses as a result of their purchases of GMX shares, are committed to vigorously prosecuting this litigation and maximizing the recovery for the class.  *See* Roselius Decl., Ex. B. Additionally, Northumberland-OLERS have been jointly prosecuting this Action since March 10, 2011 and remain the only plaintiffs to investigate the class' claims and file a complaint on behalf of all class members.  In fact, Defendants would likely have a strong argument against the timeliness of all investors' claims had Northumberland-OLERS not commenced their Action on March 10, 2011.

In addition to satisfying the preliminary requirements of Rule 23, appointment of Northumberland-OLERS also fulfills a critical legislative goal—encouraging sophisticated institutions with large financial interests to serve as lead plaintiff.  *See eSpeed*, 232 F.R.D. at 99 ("The fact that the PSLRA was designed to favor institutional investors should be taken into account…"); *see also* H.R. Conf. Rep. No. 104-369 (1995) reprinted in 1995 U.S.C.C.A.N. 730, 733 ("The Conference Committee believes that increasing the role of

institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."). Indeed, Northumberland-OLERS are institutional investors with substantial assets, and thus, are exactly the type of lead plaintiff Congress sought to encourage to participate in securities class actions under the PSLRA. *See Xianglin Shi v. Sina Corp.*, No. 05-cv-2154, 2005 WL 1561438, at *5 (S.D.N.Y. July 1, 2005) ("Because the size and experience of institutional investors can be of significant assistance to the prosecution of the action, a number of courts 'have understood [the PSLRA] to favor large institutional investors' as lead plaintiff.") (brackets in original); *see also* Dkt. No. 1 (indicating that Northumberland "manages assets of approximately $85 million" and OLERS "manages assets of approximately $600 million"). Northumberland-OLERS's sophistication and experience assures that they will adequately litigate this action and supervise class counsel.

### C.  The Court Should Approve Northumberland-OLERS's Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval. *See* 15 U.S.C. §77z-1(a)(3)(B)(v). The court should not disturb a lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. §77z-1(a)(3)(B)(iii)(II)(aa); *see also Quest*, 261 F.R.D. at 615. Because Northumberland-OLERS have selected counsel experienced in litigating securities fraud class actions with the resources to prosecute this action to the greatest recovery possible for the class, their choice of Co-Lead Counsel should be approved.

Northumberland-OLERS have selected Kessler Topaz and Nix Patterson as Co-Lead Counsel.  Kessler Topaz specializes in prosecuting complex class action litigation and is one of the preeminent law firms in its field.  Kessler Topaz is actively engaged in complex litigation and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors.  Kessler Topaz is currently serving as lead or co-lead counsel in several high profile securities class actions, including actions involving Lehman Brothers, Bank of America, Medtronic, Johnson & Johnson, Transocean and UBS and has secured billions of dollars in recoveries for investors.  *See* Roselius Decl., Ex. D.  Moreover, Kessler Topaz recently served as lead counsel in investors' class action lawsuit against SemGroup Energy Partners, *see SemGroup*, 2008 WL 4826318, at *3, which settled for $28 million.

Similarly, Nix Patterson is among the premiere securities class action law firms in the country and has considerable experience litigating complex class actions.  Nix Patterson's past successes include the $17 billion tobacco settlement the firm helped negotiate on behalf of the State of Texas.  *See* Roselius Decl., Ex E.   Moreover, Kessler Topaz and Nix Patterson have a history of successfully working together as counsel in securities actions. *See, e.g.*, *In re Delphi Corp. Sec. Litig.*, No. 05-MD-1725 (E.D. Mich.) (appointed as co-lead counsel; case settled for a total of $322 million); *In re Brocade Sec. Litig.*, No. 05-2042 (N.D. Cal.) (secured recovery of $160 million); *In re MGM Mirage Sec. Litig.*, No. 09-cv-01558, 2010 WL 4316754, at *3 (D. Nev. Oct. 25, 2010) ("There is also no reason to doubt the competence of" Nix Patterson and Kessler Topaz "in complex civil proceedings").

Nelson Roselius also has extensive experience in complex class action litigation and is highly qualified to perform the duties of liaison counsel.  *See* Roselius Decl., Ex F.

11

Nelson Roselius recently litigated investors' claims in *SemGroup* as liaison counsel with Kessler Topaz.  *See SemGroup*, 2008 WL 4826318, at \*3.  Thus, the Court may be assured that in the event this motion is granted, the members of the class will receive the highest caliber of legal representation available from these firms.

## IV.    CONCLUSION

For the foregoing reasons, Northumberland-OLERS respectfully request that the Court: (i) appoint Northumberland-OLERS as Lead Plaintiff pursuant to the PSLRA; (ii) approve their selection of Kessler Topaz and Nix Patterson to serve as Co-Lead Counsel for the class; and (iii) approve their selection of Nelson Roselius as Liaison Counsel for the class.

Dated:  February 3, 2012

Respectfully submitted,

**NELSON, ROSELIUS,
TERRY & MORTON**

*/s/ Jason E. Roselius*
Jason E. Roselius, OBA No. 16721
Derrick L. Morton, OBA No. 17934
P.O. Box 138800
Oklahoma City, OK 73113-8800
Telephone: (405) 705-3600
Facsimile: (405) 705-2573

*Proposed Liaison Counsel*

**KESSLER TOPAZ
MELTZER & CHECK, LLP**
Sean M. Handler
Naumon A. Amjed
Ryan T. Degnan
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706

Facsimile: (610) 667-7056

**NIX PATTERSON & ROACH, LLP**
Jeffrey J. Angelovich, OBA No. 19981
Bradley E. Beckworth, OBA No. 19982
205 Linda Drive
Daingerfield, TX 75638
Telephone: (903) 645-7333
Facsimile: (903) 645-5389

*Counsel for Northumberland-OLERS and*
*Proposed Co-Lead Counsel*

13

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2012, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to

the following ECF registrants:

| | |
|---|---|
| Mack J. Morgan III | morgan@crowedunlevy.com |
| L. Mark Walker | walterm@crowedunlevy.com |
| Harvey D. Ellis | ellish@crowedunlevy.com |
| Melanie W. Rughani | melanie.rughani@crowedunlevy.com |
| Kenneth P. Held | kheld@velaw.com |
| L. Ronald Oran | roran@velaw.com |

***For GMX Resources, Inc., Ken L. Kenworthy, Jr. and James A. Merrill***
_____

| | |
|---|---|
| Joe M. Hampton | jhampton@corbynhampton.com |
| Amy J. Pierce | apierce@corbynhampton.com |

***For Merrill Lynch Pierce Fenner & Smith, Inc.***
***Morgan Keegan & Company, Inc***
***Jefferies & Company Inc.***
***Howard Weil Incorporated***
***Capital One Southcoast Inc.***
***Collins Stewart LLC***
***Pritchard Capital Partners LLC***
***Tudor Pickering Holt & Co Securities Inc.***
***BBVA Securities Inc.***
***Fortis Securities LLC***
***Wedbush Morgan Securities Inc***
***Credit Suisse Securities LLC***

_____

| | |
|---|---|
| Hugh A. Baysinger | hbaysinger@piercecouch.com |
| Stephen L. Olson | solson@piercecouch.com |
| Andrew R. Harroz | aharroz@piercecouch.com |

***For Smith Carney & Co PC***
_____

I certify that on the 3rd day of February, 2012, I served the attached document by US

Postal Service, First Class Delivery, on the following, who are not registered participants of

the ECF System:

Adam S. Hakki
Christopher R. Fenton
Richard Schwed
Shearman & Sterling
599 Lexington Avenue
New York, NY   10022


*/s/ Jason E. Roselius*