**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| 1) NORTHUMBERLAND COUNTY RETIREMENT SYSTEM and 2) OKLAHOMA LAW ENFORCEMENT RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) ) ) |
| 1) GMX RESOURCES INC., 2) KEN L. KENWORTHY, JR., 3) JAMES A. MERRILL, 4) JEFFERIES & COMPANY, INC., 5) HOWARD WEIL INCORPORATED, 6) CAPITAL ONE SOUTHCOAST, INC., 7) PRITCHARD CAPITAL PARTNERS, LLC, 8) MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, 9) BBVA SECURITIES INC., 10) FORTIS SECURITIES LLC, 11) WEDBUSH MORGAN SECURITIES INC., 12) CREDIT SUISSE SECURITIES (USA) LLC, and 13) SMITH CARNEY & CO., P.C., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

CIV-11-cv-00520-D

**AMENDED**
**CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

Plaintiffs, Northumberland County Retirement System and Oklahoma Law Enforcement Retirement System ("Plaintiffs"), allege the following based upon the investigation of Plaintiffs' counsel, which included, among other things, a review of defendants' public documents, conference calls and announcements, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding GMX Resources Inc. ("GMX" or the "Company"), and securities analysts' reports and advisories about the Company.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of purchasers of the common stock of GMX, who purchased or otherwise acquired their GMX common stock pursuant or traceable to the Company's stock offerings on or about May 13, 2009 and October 22, 2009 (collectively, the "Offerings"), seeking to pursue remedies under the Securities Act of 1933 (the "Securities Act").

2.      GMX is a "pure play" independent oil and natural gas exploration and production company, which is focused on the development of unconventional Haynesville/Bossier Shale and Cotton Valley Sands in the Sabine Uplift of the Carthage, North Field of Harrison and Panola counties of East Texas.  The Company states that it is a "pure play" company because materially all of its business is devoted to drilling for and producing oil and natural gas in one core area.

3.      On or about May 13, 2009, the Company completed an equity offering (the "May 2009 Offering").  Pursuant to this offering, the Company sold 5,750,000 shares of

GMX common stock to investors at a price of $12.00 per share, for gross proceeds of $69,000,000.

4.      On or about October 22, 2009, the Company completed a second equity offering (the "October 2009 Offering").   Pursuant to this offering, the Company sold 6,950,000 shares of GMX common stock to investors at a price of $15.00 per share, for gross proceeds of $104,250,000.

5.      In connection with the May 2009 Offering, the Company filed with the SEC a Prospectus on June 25, 2008 and a Prospectus Supplement on May 14, 2009 (dated May 13, 2009) (collectively, the "May 2009 Offering Materials").   In connection with the October 2009 Offering, the Company filed with the SEC a Prospectus on June 25, 2008 and a Prospectus Supplement on October 26, 2009 (dated October 22, 2009) (collectively, the "October 2009 Offering Materials").   The May 2009 Offering Materials and October 2009 Offering Materials are collectively the "Offering Materials".

6.      The Offering Materials for each of the above Offerings contained materially untrue statements with respect to the accuracy and integrity of GMX's financial statements, as well as the adequacy of the Company's internal controls over financial reporting.

7.      Admitting that the Offering Materials were untrue at the time of their issuance, on March 11, 2010, the Company disclosed that its full year 2008 and three of its quarterly 2009 financial statements were incorrect and needed to be restated.   The Company also cautioned investors that "such financial statements should no longer be relied upon."

8.      As detailed by the Company's March 11, 2010 press release, GMX restated its financial statements to correct "for the method used to record its previous full cost pool impairment charges, other impairment charges and related deferred income taxes that adjusts the Company's earnings under Generally Accepted Accounting Principles (GAAP) for the year ended 2008 and for the first three quarters of 2009."  As a result of these "adjustments," the Company's restated net loss for fiscal year 2008 was $124.6 million as compared to the originally reported $81.7 million.

9.      Thus, GMX's 2008 10-K contained false and misleading statements when issued because, *inter alia*, the filing understated the Company's net loss for the year ended December 31, 2008 by $42.9 million.  This 10-K was incorporated by reference into the Company's Offering Materials, thereby rendering those materials equally false and misleading.

10.      The Complaint further alleges that defendants made untrue statements and material omissions during the relevant time period as they failed to disclose or indicate that:  (1) the Company had incorrectly accounted for full cost pool impairment and other impairment charges; (2) the Company had incorrectly accounted for deferred income taxes; (3) the Company's financial statements were not prepared in accordance with Generally Accepted Accounting Principles ("GAAP");  (4) the Company lacked adequate internal and financial controls; (5) as a result, the Company's financial statements contained untrue statements and material omissions at all relevant times; and (6) as a result of the foregoing, the Company's Offering materials contained untrue statements when issued.

11.     As a result of defendants' untrue statements and material omissions, Plaintiffs and other Class Members suffered damages.

## JURISDICTION AND VENUE

12.     The claims asserted herein arise under and pursuant to Sections 11, 12(a)(2), and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o).

13.     This Court has jurisdiction over the subject matter of this action pursuant to Section 22 of the Securities Act.  15 U.S.C. § 77v.

14.     Venue is proper in this District pursuant to Section 22 of the Securities Act. 15 U.S.C. § 77v.  A substantial portion of the transactions and wrongs complained of herein, including the defendants' participation in the wrongful acts detailed herein, occurred in this District.  Additionally, many of the defendants, including GMX, either reside in or maintain an executive office in this District.

## PARTIES

15.     Plaintiff, Northumberland County Retirement System ("Northumberland") purchased GMX securities traceable to the May 2009 Offering.  Northumberland is a public pension fund of over 1,350 current and retired employees of Northumberland County, Pennsylvania and manages assets of approximately $85 million.

16.     Plaintiff, Oklahoma Law Enforcement Retirement System ("OLERS") purchased GMX securities pursuant to and/or traceable to the May 2009 Offering and in the October 2009 Offering.  OLERS administers retirement/survivor retirement and medical benefits for members of the law enforcement profession of the state of Oklahoma and their families, and manages assets of approximately $600 million.

17.     Defendant GMX is an Oklahoma corporation with its principal executive offices located at One Benham Place, 9400 North Broadway, Suite 600, Oklahoma City, Oklahoma.

18.     Defendant Ken L. Kenworthy, Jr. ("Kenworthy") was, at all relevant times, the Company's President, Chief Executive Officer ("CEO"), and Chairman of the Board of Directors.

19.     Defendant James A. Merrill ("Merrill") was, at all relevant times, the Company's Chief Financial Officer ("CFO").

20.     Defendants Kenworthy and Merrill are collectively referred to hereinafter as the "Individual Defendants."

21.     Defendant Jefferies & Company, Inc. ("Jefferies") was an underwriter of the Company's May 2009 Offering and October 2009 Offering.

22.     Defendant Howard Weil Incorporated ("Howard Weil") was an underwriter of the Company's October 2009 Offering.

23.     Defendant Capital One Southcoast, Inc. ("Capital One") was an underwriter of the Company's May 2009 Offering and October 2009 Offering.

24.     Defendant Pritchard Capital Partners, LLC ("Pritchard") was an underwriter of the Company's October 2009 Offering.

25.     Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") was an underwriter of the Company's May 2009 Offering.

26.     Defendant BBVA Securities Inc. ("BBVA") was an underwriter of the Company's May 2009 Offering.

27.     Defendant Fortis Securities LLC ("Fortis") was an underwriter of the Company's May 2009 Offering.

28.     Defendant Wedbush Morgan Securities Inc. ("Wedbush Morgan") was an underwriter of the Company's May 2009 Offering.

29.     Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse") was an underwriter of the Company's October 2009 Offering.

30.     Defendants Jefferies, Howard Weil, Capital One, Pritchard, Merrill Lynch, BBVA, Fortis, Wedbush Morgan and Credit Suisse are collectively referred to hereinafter as the "Underwriter Defendants."   The Underwriter Defendants assisted in the preparation and dissemination of the offering materials for GMX's Offerings that are the subject of this action.

31.     Defendant Smith, Carney & Co., p.c. ("Smith Carney") was, at all relevant times, the Company's registered public accounting firm and audited the Company's financial statements for fiscal years 2007, 2008 and 2009.  In the Offering documents, Smith Carney represented that GMX's financial statements for fiscal years 2007, 2008 and 2009 present fairly, in all material respects, the financial position of GMX.

## SUBSTANTIVE ALLEGATIONS

### Background

32.     GMX is a "pure play" independent oil and natural gas exploration and production company, which is focused on the development of unconventional Haynesville/Bossier Shale and Cotton Valley Sands in the Sabine Uplift of the Carthage, North Field of Harrison and Panola counties of East Texas.

33.     Between May 2009 and November 2009, the Company conducted two public equity offerings, resulting in the Company receiving approximately $173 million in gross proceeds.  In connection with each of these offerings, the Company filed offering materials, which stated certain financial and operational information for investors.  The offering documents also incorporated additional information by reference.

**The Company's Offering Documents**
**<u>Contain Materially Untrue Statements</u>**

**<u>May 2009 Offering</u>**

34.     On or about May 13, 2009, the Company completed an equity offering, the May 2009 Offering.  In connection with the May 2009 Offering, the Company filed with the SEC a Prospectus on June 25, 2008 and a Prospectus Supplement on May 14, 2009, the May 2009 Offering Materials.  Pursuant to the May 2009 Offering, the Company sold 5,750,000 shares of GMX common stock to investors at a price of $12.00 per share. The May 2009 Offering resulted in the Company receiving gross proceeds of $69,000,000.

35.     The May 2009 Offering was underwritten by the following Underwriter Defendants:

|  | **Number of Shares** |
|---|---|
| Merrill Lynch, Pierce, Fenner & Smith Incorporated | 3,000,000 |
| Jefferies & Company, Inc. | 850,000 |
| Capital One Southcoast, Inc. | 850,000 |
| BBVA Securities Inc. | 100,000 |
| Fortis Securities LLC | 100,000 |

| Wedbush Morgan Securities Inc. | 100,000 |
|---|---|
| **Total:** | **5,000,000*** |

(* Not including the exercised overallotment option of an additional 750,000 shares)

36.     The May 2009 Offering Materials also incorporated certain information by reference, including the Company's 2007 Annual Report and its "consolidated financial statements as of December 31, 2007 and 2008, and for the years ended December 31, 2006, 2007 and 2008, respectively."  In this regard, the May 2009 Offering Materials stated:

> The following documents we filed with the SEC pursuant to the Securities Exchange Act of 1934, as amended (the "Exchange Act") are incorporated herein by reference: . . . our Annual Report on Form 10-K for the fiscal year ended December 31, 2007, filed with the SEC on March 14, 2008;
>
> *          *          *
>
> Our consolidated financial statements as of December 31, 2007 and 2008, and for the years ended December 31, 2006, 2007 and 2008, respectively, incorporated by reference in this prospectus supplement have been audited by Smith, Carney & Co., p.c., an independent registered public accounting firm, as stated in their report appearing in our Annual Report on Form 10-K for the year ended December 31, 2008, and have been so included in reliance upon the report of such firm given upon their authority as experts in accounting and auditing.

37.     The Company's 2007 Annual Report, filed with the SEC on March 14, 2008 and incorporated by reference into the May 2009 Offering Materials, was signed by the Individual Defendants and stated that the Company maintained adequate internal controls.  The 2007 Annual Report also included a report from Smith Carney, the Company's registered public accounting firm, which represented that GMX's financial

9

statements for fiscal 2007 "present fairly, in all material respects, the financial position of

GMX Resources Inc. and Subsidiaries as of December 31, 2007 . . . . "

38.    Additionally, the May 2009 Offering Materials stated that the Company had

evaluated its internal controls, and that it maintained adequate internal controls:

> We have evaluated our internal controls systems to allow management to
> report on, and our independent auditors to audit, our internal controls over
> financial reporting. We have performed the system and process evaluation
> and testing required to comply with the management certification and
> auditor attestation requirements of Section 404 of the Sarbanes-Oxley Act
> of 2002. We have not identified control deficiencies under applicable SEC
> and Public Company Accounting Oversight Board rules and regulations
> that remain unremediated. As a public company, we are required to report,
> among other things, control deficiencies that constitute a "material
> weakness" or changes in internal controls that, or that are reasonably likely
> to, materially affect internal controls over financial reporting. A "material
> weakness" is a significant deficiency or combination of significant
> deficiencies that results in more than a remote likelihood that a material
> misstatement of the annual or interim consolidated financial statements will
> not be prevented or detected. The report by us of a material weakness may
> cause investors to lose confidence in our consolidated financial statements,
> and our stock price may be adversely affected as a result. If we fail to
> remedy any material weakness, our consolidated financial statements may
> be inaccurate, we may face restricted access to the capital markets and our
> stock price may be adversely affected.

39.    The May 2009 Offering Materials also included summary consolidated

financial data for, *inter alia*, the year ended December 31, 2008 and the 2009 first quarter

(ended March 31, 2009).  The May 2009 Offering Materials reported a net loss for the

year ended December 31 2008 of $82.9 million, and also provided the following

additional financial information:

| (In thousands, except per share amounts) | Year Ended December 31, | Three Months Ended March 31, | |
| --- | --- | --- | --- |
| | 2008 (As Adjusted) | 2008 | 2009 |
| Depreciation, depletion and amortization | 31,744 | 6,743 | 9,716 |
| Impairment of oil and natural gas properties | 151,629 | — | 183,728 |
| Total expenses | 220,679 | 14,266 | 199,382 |
| Income (loss) from operations | (94,943) | 12,933 | (176,556) |
| Income (loss) before income taxes | (108,629) | 9,498 | (180,788) |
| Provision (benefit) for income taxes | (25,666) | 3,251 | (56,354) |
| Net Income (loss) | (82,963) | 6,247 | (124,434) |
| Net Income (loss) applicable to common stock | $(87,588) | $5,091 | $(125,590) |
| Earnings (loss) per share – Basic | $(6.16) | $0.38 | $(8.18) |
| Earnings (loss) per share – Diluted | $(5.74) | $0.38 | $(8.15) |
| Weighted average common shares – Basic | 14,216,466 | 13,277,679 | 15,354,680 |
| Weighted average common shares – Diluted | 15,255,239 | 13,401,372 | 15,403,517 |
| Oil and natural gas properties, net | $433,114 | $359,954 | $307,365 |
| Total assets | 573,671 | 156,707 | 513,729 |

(Internal references omitted)

**October 2009 Offering**

40.     On or about October 22, 2009, the Company completed a second equity offering, the October 2009 Offering.  In connection with the October 2009 Offering, the Company filed with the SEC a Prospectus on June 25, 2008 and a Prospectus Supplement on October 26, 2009 (dated October 22, 2009), the October 2009 Offering Materials. Pursuant to the October 2009 Offering, the Company sold 6,950,000 shares of GMX

common stock to investors at a price of $15.00 per share.  The October 2009 Offering resulted in the Company receiving gross proceeds of $104,250,000.

41.    The October 2009 Offering was underwritten by the following Underwriter Defendants:

|  | Number of Shares |
|---|---|
| Credit Suisse Securities (USA) LLC | 3,544,500 |
| Jefferies & Company, Inc. | 2,432,500 |
| Capital One Southcoast, Inc. | 625,500 |
| Howard Weil Incorporated | 173,750 |
| Pritchard Capital Partners, LLC | 173,750 |
| **Total:** | **6,950,000** |

42.    The October 2009 Offering Materials also incorporated certain information by reference, including the Company's 2007 and 2008 Annual Reports and GMX's "consolidated financial statements as of December 31, 2007 and 2008, and for the years ended December 31, 2006, 2007 and 2008, respectively."   In this regard, the October 2009 Offering Materials stated:

> The following documents we filed with the SEC pursuant to the Securities Exchange Act of 1934, as amended (the "Exchange Act") are incorporated herein by reference: . . . our Annual Report on Form 10-K for the fiscal year ended December 31, 2007, filed with the SEC on March 14, 2008;
>
> *      *      *
>
> Our consolidated financial statements as of December 31, 2007 and 2008, and for the years ended December 31, 2006, 2007 and 2008, respectively, incorporated by reference in this prospectus supplement have been audited by Smith, Carney & Co., p.c., an independent registered public accounting firm, as stated in its report appearing in our Annual Report on Form 10-K for the year ended December 31, 2008, and have been so included in

reliance upon the report of such firm given upon their authority as experts in accounting and auditing.

43.     The Company's 2007 Annual Report, filed with the SEC on March 14, 2008 and incorporated by reference into the October 2009 Offering Materials, was signed by the Individual Defendants and stated that the Company maintained adequate internal controls.   The 2007 Annual Report also included a report from Smith Carney, the Company's registered public accounting firm, which represented that GMX's financial statements for fiscal 2007 "present fairly, in all material respects, the financial position of GMX Resources Inc. and Subsidiaries as of December 31, 2007 . . . . "

44.     Additionally, the October 2009 Offering Materials stated that the Company had evaluated its internal controls, and that it maintained adequate internal controls:

> We have evaluated our internal controls systems to allow management to report on, and our independent auditors to audit, our internal controls over financial reporting. We have performed the system and process evaluation and testing required to comply with the management certification and auditor attestation requirements of Section 404 of the Sarbanes-Oxley Act of 2002. We have not identified control deficiencies under applicable SEC and Public Company Accounting Oversight Board rules and regulations that remain unremediated. As a public company, we are required to report, among other things, control deficiencies that constitute a "material weakness" or changes in internal controls that, or that are reasonably likely to, materially affect internal controls over financial reporting. A "material weakness" is a significant deficiency or combination of significant deficiencies that results in more than a remote likelihood that a material misstatement of the annual or interim consolidated financial statements will not be prevented or detected. The report by us of a material weakness may cause investors to lose confidence in our consolidated financial statements, and our stock price may be adversely affected as a result. If we fail to remedy any material weakness, our consolidated financial statements may be inaccurate, we may face restricted access to the capital markets and our stock price may be adversely affected.

45.     The October 2009 Offering Materials also presented the Company's financial information for, *inter alia*, the year ended December 31, 2008, and for the first two quarters of fiscal 2009.  The October 2009 Offering Materials reported a net loss for the year ended December 31, 2008 of $82.9 million, and also provided the following additional financial information:

| (In thousands, except per share amounts) | Year Ended December 31, 2008 (As Adjusted) | Six Months Ended June 30, | |
| --- | --- | --- | --- |
| | | 2008 | 2009 |
| Depreciation, depletion and amortization | 31,744 | 14,456 | 16,553 |
| Impairment and other write-downs | 151,629 | — | 186,517 |
| Income (loss) from operations | (94,943) | 33,819 | (171,695) |
| Income (loss) before income taxes | (108,629) | 26,732 | (180,883) |
| Provision (benefit) for income taxes | (25,666) | 8,426 | (48,285) |
| Net income (loss) | (82,963) | 18,306 | (132,598) |
| Net income (loss) applicable to common stock | (87,588) | 15,993 | (134,911) |
| Earnings (loss) per share—Basic | (6.16) | 1.20 | (8.06) |
| Earnings (loss) per share—Diluted | (5.74) | 1.14 | (8.03) |
| Weighted average common shares—Basic | 14,216,466 | 13,290,504 | 16,746,112 |
| Weighted average common shares—Diluted | 15,255,239 | 14,037,223 | 16,791,133 |
| Oil and natural gas properties, net | $433,114 | $420,226 | $334,432 |
| Total assets | 573,671 | 535,728 | 529,963 |

(Internal references omitted)

46.     The statements contained in ¶¶ 36-38 and 42-44 were untrue statements and omitted material facts at the time the statements were issued.  Specifically, the defendants

made untrue statements and material omissions as they failed to disclose or indicate that: (1) the Company had incorrectly accounted for full cost pool impairment and other impairment charges; (2) the Company had incorrectly accounted for deferred income taxes; (3) the Company's financial statements were not prepared in accordance with GAAP; (4) the Company lacked adequate internal and financial controls; (5) as a result, the Company's financial statements contained untrue statements and material omissions at all relevant times; and (6) as a result of the foregoing, the Company's offering materials contained untrue statements when issued.

### GMX Admits That The Offering Documents Included Untrue Statements

47.    On March 11, 2010, the Company issued a press release which stated "GMX Resources Inc. Announces Restatement of Year End 2008 and Quarterly 2009 Earnings, Reports Fourth Quarter and Full Year 2009 Financial and Operating Results and Declares Quarterly Cash Dividend on Its 9.25% Series B Cumulative Preferred Stock" (the "Restatement").  The press release stated, in relevant part:

**Restatement of Year End 2008 and Quarterly 2009 Earnings**

GMXR is correcting a non-cash charge for the method used to record its previous full cost pool impairment charges, other impairment charges and related deferred income taxes that adjusts the Company's earnings under Generally Accepted Accounting Principles (GAAP) for the year ended 2008 and for the first three quarters of 2009. In addition, the Company has adjusted its previously reported GAAP diluted loss per share for such periods to remove the effects of dilutive securities in calculating diluted loss per share. ***As a result of these adjustments, the Company's restated net loss for the year ended December 31, 2008 was $124.6 million as compared to the originally reported $81.7 million*** (net loss of $83.0 as adjusted for the retrospective adoption of a change in accounting for the Company's 5.00% Convertible Notes). The restatement changes are reflected in the amounts and financial statements included in this press

release. The prior errors were determined during the preparation and independent audit of the Company's December 31, 2009 financial statements. ***Based on the errors in the 2008 year-end and 2009 quarterly financial statements, the Company's Audit Committee concluded on March 10, 2010, that such financial statements should no longer be relied upon.***

\*        \*        \*

| | Three Months Ended December 31, | | | |
| | 2009 | | 2008 (as adjusted and restated) | |
| | (unaudited) | | | |
| (in thousands, except for per share amounts) | Amount | Per share | Amount | Per share |
| Net loss applicable to GMXR shareholders | $(49,311) | $(1.90) | $(153,978) | $(10.04) |
| Adjustments: | | | | |
| Impairment of oil and natural gas properties, net of taxes of $65,501 for 2008 | 50,072 | 1.87 | 127,149 | 8.28 |
| Deferred income tax valuation allowance | --- | --- | 26,075 | 1.70 |
| Unrealized (gain) loss derivatives net of taxes of $120 for 2008 | (457) | (0.02) | 234 | 0.01 |
| Loss on extinguishment of debt | 4,976 | 0.19 | --- | --- |
| Adjusted net income (loss) applicable to GMXR shareholders | $5,280 | $0.20 | $(520) | $(0.04) |

\*        \*        \*

***GMXR reported net loss applicable to GMXR shareholders of $185.3 million for the year ended December 31, 2009*** as compared to 2008's annual net loss applicable to GMXR shareholders of $129.3 million. Results for 2009 and 2008 included impairment charges of $188.1 million and $192.7 million, respectively, related to the Company's oil and natural gas properties. Non-GAAP adjusted net income (loss) available to GMXR shareholders for the year ended December 31, 2008 and 2009, adjusting for such items as unrealized derivative gains and losses, impairment charges on

oil and natural gas properties and a loss on extinguishment of debt is as follows:

| | Year Ended December 31, | | | |
|---|---|---|---|---|
| | **2009** | | **2008**<br><br>(as adjusted and restated) | |
| | (unaudited) | | | |
| | **Amount** | **Per share** | **Amount** | **Per share** |
| Net loss applicable to GMXR shareholders | $(185,264) | (9.17) | $(129,262) | (9.09) |
| Adjustments: | | | | |
| Impairment on oil and natural gas properties, net of taxes of $65,501 for 2008 | 188,150 | 8.96 | 127,149 | 8.36 |
| Deferred income tax valuation allowance | — | — | 26,075 | 1.71 |
| Unrealized (gain) loss on derivatives net of taxes of $120 for 2008 | 2,370 | 0.11 | 234 | 0.02 |
| Loss on extinguishment of debt | 4,976 | 0.24 | — | — |
| Bad debt expense, net of taxes of $254 in 2008 | 486 | 0.02 | 494 | 0.03 |
| Adjusted net income (loss) applicable to GMX shareholders | $10,718 | 0.53 | $24,690 | 1.62 |

(Internal references omitted, emphasis added)

48.     On March 16, 2010, the Company filed its 2009 Annual Report with the SEC on Form 10-K.  The Individual Defendants signed the 2009 Annual Report.  The Form 10-K further restated the Company's financial results for fiscal year 2008, and quarterly results for the fiscal quarters ended December 31, 2008, March 31, 2009, June 30, 2009 and September 30, 2009 as follows:

The effects of the restatement on the 2008 and 2009 unaudited quarterly financial data are as follows:

| | For the Three Months Ended December 31, 2008 | | | |
|---|---|---|---|---|
| | As Previously Reported | Corrections | Adjustments | As Adjusted and Restated |
| **Income Statement** | | | | |
| Impairment of oil and natural gas properties | $151,629 | $41,021 | $ — | $192,650 |
| Interest expense | 3,086 | — | 194 | 3,280 |
| Income (loss) before income taxes | (149,830) | (41,021) | (194) | (191,045) |
| (Provision) benefit for income taxes | 38,784 | (560) | — | (38,224) |
| Net income (loss) | (111,046) | (41,581) | (194) | (152,821) |
| Net income (loss) applicable to common shareholders | (112,202) | (41,581) | (194) | (153,977) |
| Earnings (loss) per share—basic | (7.31) | — | — | (10.04) |
| Earnings (loss) per share—diluted | (7.27) | — | — | (10.04) |
| Weighted average common shares—diluted | 15,425,855 | — | — | 15,341,546 |

| | March 31, 2009 | | |
|---|---|---|---|
| | As Previously Reported | Corrections | As Restated |
| | (Amounts in thousands, except share and per share data) | | |
| **Balance Sheet** | | | |
| Oil and natural gas properties based on the full cost method, net of accumulated depreciation, depletion and impairment | $307,365 | $(5,662) | $301,703 |
| Property and equipment, at cost, net | 88,492 | 11,147 | 99,639 |
| Deferred income tax assets | 62,651 | (62,651) | — |
| Total assets | 513,729 | (57,166) | 456,563 |
| Deferred income tax liabilities | 8,725 | (8,725) | — |
| Accumulated deficit | (183,492) | (48,441) | (231,933) |
| Total liabilities and equity | 513,729 | (57,166) | 456,563 |

| | For the Three Months Ended March 31, 2009 |
|---|---|

| Income Statement | | | |
|---|---|---|---|
| Impairment of oil and natural gas properties | $183,728 | $(45,650) | $138,078 |
| Depreciation, depletion, and amortization | 9,716 | (856) | 8,860 |
| Income (loss) before taxes | (180,788) | 46,506 | (134,282) |
| (Provision) benefit for income taxes | 56,354 | (53,926) | 2,428 |
| Net income (loss) | (124,434) | (7,420) | (131,854) |
| Net income (loss) applicable to common shareholders | (125,590) | (7,420) | (133,010) |
| Earnings (loss) per share—basic | (8.18) | — | (8.66) |
| Earnings (loss) per share—diluted | (8.15) | — | (8.66) |
| Weighted average common shares—diluted | 15,403,517 | — | 15,354,680 |

| | June 30, 2009 | | |
|---|---|---|---|
| | As Reported | Corrections | As Restated |
| | (Amounts in thousands, except share and per share data) | | |
| Balance Sheet | | | |
| Oil and gas properties based on the full cost method, net of accumulated depreciation, depletion and impairment | $334,432 | $2,241 | $336,673 |
| Property and equipment, at cost, net | 94,155 | 6,229 | 100,384 |
| Deferred income tax assets | 56,928 | (56,928) | — |
| Total assets | 529,963 | (48,458) | 481,505 |
| Deferred income tax liabilities | 8,118 | (8,118) | — |
| Accumulated deficit | (192,814) | (40,340) | (233,154) |
| Total liabilities and equity | 529,963 | (48,458) | 481,505 |

| | For the Three Months Ended June 30, 2009 | | |
|---|---|---|---|
| Income Statement | | | |
| Impairment of oil and natural gas properties | $2,789 | $(2,789) | $ — |
| Depreciation, depletion, and | 6,837 | (196) | 6,641 |

| | | | |
|---|---|---|---|
| amortization | | | |
| Income (loss) before taxes | (95) | 2,985 | 2,890 |
| (Provision) benefit for income taxes | (8,069) | 5,116 | (2,953) |
| Net income (loss) | (8,164) | 8,101 | (63) |
| Net income (loss) applicable to common shareholders | (9,321) | 8,101 | (1,220) |
| Earnings (loss) per share—basic | (0.52) | — | (0.07) |
| Earnings (loss) per share—diluted | (0.51) | — | (0.07) |
| Weighted average common shares—diluted | 18,132,849 | — | 18,093,208 |

| | For the Six Months Ended June 30, 2009 | | |
|---|---|---|---|
| **Income Statement** | | | |
| Impairment of oil and natural gas properties | $186,517 | $(48,439) | $138,078 |
| Depreciation, depletion, and amortization | 16,553 | (1,052) | 15,501 |
| Income (loss) before taxes | (180,883) | 49,491 | (131,392) |
| (Provision) benefit for income taxes | 48,285 | (48,810) | (525) |
| Net income (loss) | (132,598) | 681 | (131,917) |
| Net income (loss) applicable to common shareholders | (134,911) | 681 | (134,230) |
| Earnings (loss) per share—basic | (8.06) | — | (8.02) |
| Earnings (loss) per share—diluted | (8.03) | — | (8.02) |
| Weighted average common shares—diluted | 16,791,133 | — | 16,746,112 |

| | September 30, 2009 | | |
|---|---|---|---|
| | **As Previously Reported** | **Corrections** | **As Restated** |
| | **(Amounts in thousands, except share and per share data)** | | |
| **Balance Sheet** | | | |
| Oil and natural gas properties based on the full cost method, net of accumulated depreciation, depletion and impairment | $352,386 | $2,323 | $354,709 |
| Property and equipment, at cost, net | 94,682 | 6,229 | 100,911 |

| | | | |
|---|---|---|---|
| Deferred income tax assets | 53,047 | (53,047) | — |
| Total assets | 535,843 | (44,495) | 491,348 |
| Deferred income tax liabilities | 5,715 | (5,715) | — |
| Accumulated deficit | (195,597) | (38,780) | (234,377) |
| Total liabilities and equity | 535,843 | (44,495) | 491,348 |

| | For the Three Months Ended September 30, 2009 | | |
|---|---|---|---|
| **Income Statement** | | | |
| Depreciation, depletion, and amortization | $7,834 | (82) | 7,752 |
| Income (loss) before taxes | 1,746 | 82 | 1,846 |
| (Provision) benefit for income taxes | (4,546) | 1,478 | (3,068) |
| Net income (loss) | (2,782) | 1,560 | (1,222) |
| Net income (loss) applicable to common shareholders | (3,938) | 1,560 | (2,378) |
| Earnings (loss) per share—basic | (0.19) | — | (0.11) |
| Earnings (loss) per share—diluted | (0.19) | — | (0.11) |
| Weighted average common shares—diluted | 21,160,616 | — | 21,122,331 |

(Internal references omitted)

49.     The March 16, 2010 Form 10-K also provided the following additional financial information for fiscal year 2008 (ended December 31, 2008) and 2009 (ended December 31, 2009):

| | Year Ended December 31, | |
|---|---|---|
| (in thousands, except share and per share data) | **2008 (as adjusted)** | **2009** |
| **Statement of Operations Data:** | | |
| Impairment of oil and natural gas properties | 192,650 | 188,150 |
| Total expenses | 261,700 | 251,392 |
| Income (loss) from operations | (135,964) | (157,098) |
| Total non-operating income (expense) | (13,686) | (23,401) |
| Income (loss) before income taxes | (149,650) | (180,499) |
| (Provision) benefit for income taxes | 25,013 | 33 |

| | | |
|---|---|---|
| Net income (loss) | (124,637) | (180,466) |
| Net income attributable to non-controlling interest | — | 173 |
| Net income (loss) applicable to GMX Resources | (124,637) | (180,639) |
| Net income (loss) applicable to GMX Resources common shareholders | $(129,262) | $(185,264) |
| Earnings (loss) per share—basic | $(9.09) | $(9.17) |
| Earnings (loss) per share—diluted | $(9.09) | $(9.17) |
| Weighted average common shares—basic | 14,216,466 | 20,210,400 |
| Weighted average common shares—diluted | 14,216,466 | 20,210,400 |
| | | |
| **Statement of Cash Flows Data:** | | |
| Cash provided by operating activities | $83,237 | $49,490 |
| Cash used in investing activities | (318,360) | (181,324) |
| | | |
| **Balance Sheet Data (at end of period):** | | |
| Oil and natural gas properties, net | $383,890 | $331,329 |
| Total assets | 525,001 | 519,638 |
| Long-term debt, including current portion | 224,342 | 190,278 |
| Total GMX Resources equity | 243,743 | 243,947 |

(Internal references omitted)

50.    As indicated in the above paragraph, one of the largest corrections to the Company's income statement was to the reported impairment of oil and natural gas properties for the three months ended December 31, 2008 and March 31, 2009 and for the six months ended June 30, 2009.

51.    The measurement of impairment reported in the Company's income statement is significant, as $192,650,000 of the $261,700,000 in total expenses recorded for the year ended December 31, 2008 related to the impairment of oil and natural gas properties.  Similarly, $188,150,000 of the Company's $251,392,000 total expenses for

the year ended December 31, 2009 stemmed from the impairment of oil and natural gas properties.  Furthermore, the magnitude of the impairment charges in the 2008 and 2009 fiscal years was such that, had those charges not been necessary or recorded, the Company would have reported a net profit, as opposed to the losses ultimately reflected. This fact demonstrates the importance of the Company's ability to measure impairment in an appropriate and timely manner.  Due to the relationship between the impairment charges and the Company's income and expenses, and as recognized by the fact of the Restatement itself, changes in this metric are material.

52.     Additionally, the March 16, 2010 Form 10-K detailed management's report on GMX's internal controls as follows:

> In March 2010, *we identified a material weakness in our internal control over financial reporting due to management's improper application of generally accepted accounting principles resulting in corrections to our previously reported December 31, 2008 consolidated financial statements and the first three quarters of 2009. Management failed to timely detect and correct errors relating to the improper application of generally accepted accounting principles in determining our full cost pool impairment charges, other impairment charges, and related deferred income taxes. Management also failed to timely detect and correct errors as a result of improperly including dilutive securities in our computation of diluted loss per share.* After considering the impact of these corrections, management and the audit committee of our Board of Directors *concluded that our December 31, 2008 consolidated financial statements should be restated as presented in this Form 10-K and that a material weakness exists in our internal control over financial reporting related to the improper application of generally accepted accounting principles*. The errors were determined during the preparation and independent audit of our December 31, 2009 financial statements. As a result, management has concluded that our internal control over financial reporting was not effective as of December 31, 2009.

> As a consequence of the *material weakness* identified above, our management has implemented a plan to reassign certain duties within the

financial reporting department to ensure executive financial management has sufficient resources to properly research new and existing accounting guidance on a regular basis. Management believes this process will result in a more efficient internal control structure and effectively remedy the material weakness identified above.  (Emphasis added)

53.     Regulation S-X sets forth the definition of "material weakness" as it relates

to internal controls over financial reporting.  This definition provides:

Material weakness means a deficiency, or a combination of deficiencies, in internal control over financial reporting . . . such that there is a reasonable possibility that a **_material misstatement_** of the registrant's annual or interim financial statements **_would not be prevented or detected on a timely basis._**

17 C.F.R. § 210.1(a)(4) (emphasis added).

54.     In connection with the Restatement, the Company not only disclosed that it

had "identified a material weakness" in internal controls, but further stated that because

of this deficiency, "[m]anagement failed to timely detect and correct errors . . ."  By

classifying this deficiency as a "material weakness," GMX was thereby admitting not

just that the identified failure in the system of internal controls had created a risk of

material misstatements in the Company's financial statements, but that such weakness

existed contemporaneous with the period(s) during which the Company's financial

statements were ultimately found to be misstated – a reality that was not communicated

contemporaneously by GMX.

55.     The notes to the consolidated financial statements, filed with the Form 10-K

on March 16, 2010, also contained the following statement:

**NOTE B—CORRECTION OF ERRORS**

The Company concluded that its previously issued financial statements for the year ended December 31, 2008, and the quarters ended

March 31, June 30, and September 30, 2009, respectively, contain errors.

\*       \*       \*

The following financial statement line items in the consolidated balance sheet as of December 31, 2008 were adjusted to correct the errors:

**GMX Resources Inc. and Subsidiaries**
**Notes to Consolidated Financial Statements—(Continued)**
**December 31, 2007, 2008 and 2009**

| | As reported | Adjustments due to Correction of Errors | As Restated for Correction of Errors |
|---|---|---|---|
| | | (in thousands) | |
| **ASSETS** | | | |
| Oil and natural gas properties, based on the full cost method | | | |
| Properties being amortized | $608,865 | $(8,203) | $600,662 |
| Accumulated depreciation, depletion and impairment | $(211,785) | $(41,021) | $(252,806) |
| Property and equipment, at cost, net | $85,284 | $8,203 | $93,487 |
| Deferred income taxes | $11,519 | $(11,519) | $ — |
| **LIABILITIES AND EQUITY** | | | |
| Current liabilities | | | |
| Deferred income tax | $(6,996) | $(6,996) | $ — |
| Equity | | | |
| Accumulated deficit | $(56,652) | $(45,544) | $(102,196) |
| Expenses: | | | |
| Impairment of oil and natural gas properties | $151,629 | $41,021 | $192,650 |
| Income (loss) from operations | $(94,943) | $(41,021) | $(135,964) |
| (Provision) benefit for income taxes | $24,980 | $(4,523) | $20,457 |
| Net income (loss) | $(81,713) | $(45,544) | $(127,257) |
| Net income (loss) applicable to common shareholders | $(86,338) | $(45,544) | $(131,882) |
| Earnings (loss) per share – basic | $(6.07) | $(3.21) | $(9.28) |
| Earnings (loss) per share – diluted | $(5.66) | $(3.62) | $(9.28) |

(Internal references omitted)

56.     As set forth in the paragraph above, the Company was forced to make an adjustment of $45,544,000 to the net loss reported in its December 31, 2008 consolidated balance sheet "for correction of errors."   GMX also restated numerous other line items in its consolidated balance sheet.

57.     Statement of Financial Accounting Standards No. 154 ("SFAS 154") provides:

> Any ***error*** in the financial statements of a prior period discovered subsequent to their issuance shall be reported as a prior-period adjustment by ***restating*** the prior-period financial statements.

*Accounting Changes and Error Corrections*, Statement of Fin. Accounting Standards No. 154 (Fin. Accounting Standards Bd. 2005) (emphasis added).   Furthermore, SFAS 154 defines "restatement" as "the process of revising previously issued financial statements to reflect the correction of an ***error*** in those financial statements."  *Id*. (emphasis added).

58.     By contrast, SFAS 154 provides that to reflect a change in accounting principles, a company need not issue a restatement and is instead required only to disclose, in part:

> a. The nature of and reason for the change in accounting principle, including an explanation of why the newly adopted accounting principle is preferable.
>
> b. The method of applying the change, and:
>
> > (1) A description of the prior-period information that has been retrospectively adjusted, if any.
> >
> > (2) The effect of the change on income from continuing operations, net income (or other appropriate captions of changes in the applicable net assets or performance indicator), any other affected financial statement line item, and any affected per-share amounts for the current period and any prior periods retrospectively adjusted. Presentation of the effect on financial

statement subtotals and totals other than income from continuing operations and net income (or other appropriate captions of changes in the applicable net assets or performance indicator) is not required.

(3) The cumulative effect of the change on retained earnings or other components of equity or net assets in the statement of financial position as of the beginning of the earliest period presented.

*Id*. SFAS 154 defines a "change in accounting principle," in part, as "[a] change in the *method* of applying an accounting principle." *Id*. (emphasis in original).

59.     SFAS 154 further provides, "[t]he provisions of this Statement need not be applied to ***immaterial*** items." *Id*. (emphasis added). Therefore, an adjustment or a restatement pursuant to SFAS 154 need not be undertaken unless the item or items to be restated or adjusted are material, and should only be referred to as a restatement if the adjustments to a company's financial statements emanate from errors that were found to have existed in a prior reporting period, based on information, circumstances, and accounting rules that existed and were known, or should have been known, contemporaneous to the reporting period subject to the restatement.

60.     The Company's admission that "errors" existed in its financial statements, coupled with its decision to not only restate its financial statements but to insist that users of the Company's previously-issued financial statements should no longer rely on such financial statements, rather than simply making the disclosures required to account for a change in accounting principles, for instance, demonstrates that the adjustments made to the 2008 and 2009 financial statements were not prompted merely by evolving accounting principles or interpretations of the rules governing the Company's accounting. Instead, the Company was required to restate its financial statements for the

year ended December 31, 2008 and the first three quarters of 2009 in order to correct material errors initially present in these financial statements.

61. Furthermore, the Company's restated balance sheets for the year ended December 31, 2008, and the quarters ended March 31, 2009, June 30, 2009 and September 30, 2009 removed all deferred income tax assets ("DTA") for these periods. A DTA arises when a company incurs net losses for a reporting period and does not, therefore, have associated tax obligations.  A DTA is considered an asset because it affords a company the opportunity to offset tax obligations that may arise during a fixed period into the future (*i.e.*, to offset tax obligations that would emanate in future years should the company generate taxable income).  However, a DTA may only be maintained on a company's balance sheet when the company expects that it will be realized, *i.e.*, as long as the company expects, in good faith, that it will have future taxable income against which to apply the DTA.

62. As part of the Restatement, as mentioned above, the Company decided to eliminate all of the DTAs it had reflected in its previously issued financial statements. By eliminating the DTA recorded for each of these periods, GMX reflected its conclusion that it was more likely than not that the Company would have no taxable income in future years.  Such an adjustment, as with respect to any asset, must be based on information, circumstances, and expectations that existed at a particular point in time. It is not proper to adjust a deferred tax asset based on information or circumstances that arise subsequent to a balance sheet date, as each balance sheet should reflect a snapshot of a company's financial position as of a point in time.

63.     As such, the Company's actions in connection with its Restatement indicate a concession that the Company did not expect to have sufficient taxable income in the future to allow for utilization of the recorded DTA.  As originally filed, however, the Company's financial statements failed to allow for any such conclusion, instead reflecting significant DTAs.  Ultimately, the Company's decision to restate its financial statements for these quarters, including the DTAs reflected in the corresponding balance sheets, and in concert with the Company's conclusion that it had a material weakness in the area of financial reporting throughout the accounting periods covered by the Restatement, indicate that those financial statements, as originally filed, contained errors and were, therefore, false and misleading, including with respect to the Company's own outlook for generating future taxable income.

## PLAINTIFFS' CLASS ACTION ALLEGATIONS

64.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a Class, consisting of all those who purchased or otherwise acquired GMX's common stock pursuant or traceable to the Company's May 2009 Offering and October 2009 Offering, and who were damaged thereby (the "Class").  Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

65.     The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial

benefits to the parties and the Court.  According to the Offering Materials, the Company sold 5.75 million shares of GMX stock to investors in the May 2009 Offering, and 6.95 million shares of GMX stock to investors in the October 2009 Offering.  These shares of GMX stock are owned by thousands of persons.

66.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)     Whether the Securities Act was violated by defendants;

(b)     Whether defendants omitted and/or made untrue statements of material facts;

(c)     Whether Offering Materials statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

(d)     The extent of damage sustained by Class members and the appropriate measure of damages.

67.     Plaintiffs' claims are typical of those of the Class because Plaintiffs and the Class sustained damages from defendants' wrongful conduct.

68.     Plaintiffs will adequately protect the interests of the Class and have retained counsel whom are experienced in class action securities litigation.  Plaintiffs have no interests which conflict with those of the Class.

69.     A class action is superior to other available methods for the fair and

efficient adjudication of this controversy.

## FIRST CLAIM

### Violation of Section 11 of The Securities Act
### Against All Defendants

70.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.  This claim does not sound in fraud.

71.     This count is predicated upon defendants' liability for making untrue statements in the Offering Materials.  The Underwriter Defendants' liability under this Count is limited only to the Offerings they underwrote as set forth above.  *See supra*, ¶¶ 34 & 40.

72.     This claim is asserted by Plaintiffs against all defendants by, and on behalf of, persons who acquired shares of the Company's securities pursuant to or traceable to the Offering Materials issued in connection with the Company's May 2009 Offering and October 2009 Offering.

73.     This claim is brought within one year after discovery of the untrue statements and omissions in the Offering Materials and within three years of the effective date of the Offering Materials.  By virtue of the foregoing, Plaintiffs and the other members of the Class are entitled to damages from the defendants and each of them, jointly and severally (to the extent the defendants participated in the Offerings).

## SECOND CLAIM

### Violation of Section 12(a)(2) of The Securities Act
### Against GMX and the Underwriter Defendants

74.     Plaintiffs repeat and reallege each and every allegation contained above as

if fully set forth herein.  This claim does not sound in fraud.

75.     This count is predicated upon GMX and the Underwriter Defendants' liability for making untrue statements in the prospectuses used in connection with the Offerings.  The Underwriter Defendants' liability under this Count is limited only to the Offerings they underwrote as set forth above.  *See supra*, ¶¶ 34 & 40.

76.     The defendants named in this count were sellers, offerors, and/or solicitors of purchasers of the shares offered pursuant to the prospectuses used to complete the Offerings listed herein.

77.     This action is brought within three years from the time that the securities upon which this Count is brought were sold to the public, and within one year from the time when Plaintiffs discovered or reasonably could have discovered the facts upon which this Count is based.

## THIRD CLAIM

### Violation of Section 15 of The Securities Act
### Against the Individual Defendants

78.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein only.  This claim does not sound in fraud.

79.     As set forth herein, GMX violated Section 11 of the Securities Act by issuing securities based on Offering Materials containing untrue statements and omissions of material facts.  As the issuer, GMX faces strict liability for its violations of Section 11.

80.     The Individual Defendants, by virtue of their positions and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of GMX within the meaning of Section 15 of the Securities Act.

81.     The Individual Defendants had the power and influence and exercised the same to cause GMX to engage in the acts described herein.

82.     By virtue of the conduct alleged herein, the Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiffs and the Class for damages suffered.

**WHEREFORE**, Plaintiffs pray for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Fed. R. Civ. P. 23;

(b)     Awarding compensatory damages and equitable relief in favor of Plaintiffs and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated:  August 17, 2012.                     Respectfully submitted,

                                             **NELSON, ROSELIUS, TERRY
                                              & MORTON**

                                             */s/ Derrick L. Morton*
                                             Jason E. Roselius, OBA No. 16721
                                             Derrick L. Morton, OBA No. 17934
                                             P. O. Box 138800
                                             Oklahoma City, Oklahoma 73113-8800
                                             Tel: (405) 705-3600
                                             Fax: (405) 705-2573

                                             *Counsel for Plaintiffs*

                                             **KESSLER TOPAZ MELTZER & CHECK,
                                             LLP**
                                             Michael K. Yarnoff
                                             Margaret E. Onasch
                                             280 King of Prussia Road
                                             Radnor, PA  19087
                                             Tel:  (610) 667-7706
                                             Fax:  (610) 667-7056
                                             *Counsel for Plaintiffs*

                                             **NIX PATTERSON & ROACH, LLP**
                                             Jeffery J. Angelovich, OBA No. 19981
                                             Bradley E. Beckworth, OBA No. 19982
                                             Brad Seidel
                                             Susan Whatley, OBA No. 30960
                                             Lisa Baldwin
                                             205 Linda Drive
                                             Daingerfield, TX  75638
                                             Tel:  (903) 645-7333
                                             Fax:  (903) 645-5389
                                             *Counsel for Plaintiffs*

*Certificate of Service*

_____ I hereby certify that on (date) _____, I electronically transmitted the

attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on

file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants: (insert names)

_____ I hereby certify that on (date) _____, I served the attached document by

(service method) _____ on the

following, who are not registered participants of the ECF System: (insert names and addresses)

s/_____
s/ Attorney Name