## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| NORTHUMBERLAND COUNTY RETIREMENT SYSTEM, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | NO. CIV-11-520-D |
| KEN L. KENWORTHY, JR., et al., | ) ) | |
| Defendants. | ) | |

## ORDER

Before the Court are three separate motions [Doc. Nos. 115, 116, and 117] to dismiss the Amended Class Action Complaint ("Amended Complaint"). Each motion seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(6), arguing the Amended Complaint fails to state a plausible claim for relief. Lead Plaintiffs[1] timely responded, and replies were filed in support of two of the motions. The motions are fully briefed and at issue. Because all movants assert the same primary arguments in support of dismissal, all motions are addressed in this Order. Where a movant asserts an argument limited only to the claims asserted against it, that contention is also addressed as noted herein.

I. Background:

In this action, Lead Plaintiffs assert claims based on alleged violations of the Securities Act of 1933 (the "1933 Act"), 15 U. S. C. § § 77k, 77l, and 77o. They seek to represent a putative class consisting of all purchasers of GMX Resources, Inc. ("GMX") common stock pursuant to, or traceable to, GMX's public offerings in May 2009 and October 2009. The action was filed in the

---

[1]By Order of July 3, 2012 [Doc. No. 94], the Court granted the motion of Northumberland County Retirement System and Oklahoma Law Enforcement Retirement System to be appointed lead plaintiffs in this action, and also approved the lead plaintiffs' selection of their respective counsel to serve as lead counsel.

District Court of Oklahoma County and removed to this Court.  Lead Plaintiffs filed a motion to remand, which was denied in a November 16, 2011 Order [Doc. No. 69].

On August 17, 2012, Lead Plaintiffs filed the Amended Complaint [Doc. No. 114], asserting three claims for relief: 1) a claim alleging that all defendants violated Section 11 of the 1933 Act; 2) a claim alleging that GMX and the underwriters of the offerings[2] violated Section 12(a)(2) of the 1933 Act; and 3) a claim that Defendants Ken L. Kenworthy, Jr. ("Kenworthy") and James A. Merrill ("Merrill") are liable as controlling persons of GMX for the claimed  violation of Section 11 of the 1933 Act.

GMX, Kenworthy, and Merrill jointly filed a motion to dismiss [Doc. No. 115] the Amended Complaint.  Defendant Smith Carney & Co., P.C. ("Smith Carney") separately moved to dismiss [Doc. No. 116] the claims asserted against it, and the underwriter defendants also filed a motion to dismiss [Doc. No. 117].   Lead Plaintiffs filed a combined response to the motions filed by GMX, Kenworthy, and Merrill and the underwriter defendants' motion, and those movants filed replies.  Lead Plaintiffs filed a separate response to Smith Carney's motion.

Subsequent to the completion of all briefing on the motions to dismiss, GMX filed a notice of bankruptcy [Doc. No. 131], invoking the automatic stay.  Accordingly, the Court took no action on the pending motions.  However, on July 17, 2013, the parties filed a Stipulation of Dismissal [Doc. No. 132] in which they stipulated to the dismissal with prejudice of all claims asserted against GMX in this action.  Accordingly, the motion to dismiss is rendered moot as to GMX and need not

---

[2]The underwriters are Defendants Jefferies & Company, Inc.; Howard Weil Incorporated; Capital One Southcoast, Inc.; Pritchard Capital Partners, LLC; Merrill Lynch, Pierce, Fenner & Smith Incorporated; BBVA Securities Inc.; Fortis Securities LLC; Wedbush Morgan Securities, Inc.; and Credit Suisse Securities (USA) LLC (the "underwriter defendants").

be addressed by the Court.  The Stipulation of Dismissal does not, however, dismiss the claims against Kenworthy and Merrill, the underwriter defendants, or Smith Carney.  Accordingly, the motions asserted by those defendants remain pending.

II. Standards governing Rule 12(b)(6) motions:

To avoid dismissal pursuant to  Rule 12(b)(6), a complaint "must contain enough factual allegations 'to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Robbins v. Oklahoma*, 519 F. 3d 1242, 1247 (10th Cir. 2008).   To state a plausible claim, a plaintiff has the burden to frame a "complaint with enough factual matter (taken as true) to suggest" that he is entitled to relief.  *Robbins*,  519 F. 3d at 1247.)  "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U. S. at 555. Thus,  plaintiffs  must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible."  *Id.* at 570;  *Robbins*, 519 F. 3d at 1247.  The "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F. 3d 1174, 1177 (10th Cir. 2007) (emphasis in original).   Although the Court must construe well-pleaded facts as true, not all factual allegations are "entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   The Court need not accept as true the assertions in a complaint which "amount to nothing more than a 'formulaic recitation of the elements'" of a claim. *Id*. (quoting *Twombly*, 550 U.S. at 554-555).

The question to be decided is "whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed."

*Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (internal quotation marks omitted).   A complaint need not recite "detailed factual allegations, but the factual allegations must be enough to raise the right to relief above the speculative level." *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir.2009) (internal quotation marks omitted).   "[I]n ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable."  *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

Where a complaint alleges causes of action based on federal securities laws, the requirements of *Twombly* and *Iqbal* must be satisfied.  *In re IAC/InterActive Corp. Securities Litigation*, 695 F. Supp. 2d 109, 117 ( S.D.N.Y. 2010).   Rule 12(b)(6) dismissals of securities claims "are difficult to obtain because the cause of action deals primarily with fact-specific inquiries such as materiality." *In re SemGroup Energy Partners, L. P.,* 729 F.Supp. 2d 1276, 1286 (N. D. Okla.2010) (citing *Grossman v. Novell, Inc.*, 120 F. 3d 1112, 1118 (10th Cir. 1997)).   However, "'courts do not hesitate to dismiss securities claims pursuant to Rule 12(b)(6) where the alleged misstatements or omissions'" are "'plainly immaterial.'" *Id.* (quoting *Grossman*, 120 F. 3d at 1118).

In analyzing a Rule 12(b)(6) motion to dismiss, a court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Specifically, courts may take judicial notice of federally regulated filings, including SEC filings.  *In re Morgan Stanley Information Fund Securities Litig.*, 592 F.3d 347, 355 n. 5 (2d Cir. 2010).

III. Application:

A.  Essential allegations to support Section 11 and 12(2)(a) claims:

4

Section 11 of the 1933 Act "imposes civil liability on issuers and other signatories of a registration statement if the registration statement contains material misstatements or omissions and the plaintiffs acquired the securities without knowledge of such misrepresentations." *McMahan & Co. v. Wherehouse Entertainment*, 65 F. 3d 1044, 1047 (2d Cir.1995); *Police and Fire Retirement System of City of Detroit v. SafeNet, Inc.*,645 F.Supp.2d 210, 226 (S.D.N.Y.,2009). Section 11 provides a cause of action by the purchaser of the registered security against "the security's issuer, its underwriter, and certain other statutorily enumerated parties." *In re Morgan Stanley Information Fund Securities Litigation*, 592 F. 3d 347, 358 (2d Cir. 2010).

To state a claim for relief under Section 11, a plaintiff must allege: (1) he purchased a registered security, either directly from the issuer or in the aftermarket following the offering; (2) the defendants participated in the offering in a manner sufficient to give rise to liability under § 11; and (3) the registration statement "'contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading.'" *Id.* at 358-59 (quoting 15 U. S. C. § 77k(a)).

Section 12(a)(2) of the 1933 Act provides for essentially the same cause of action as Section 11, but it applies only to claims based on alleged omissions or misstatements where the securities at issue were purchased from a "statutory seller." *Pinter v. Dahl*, 486 U. S. 622, 643-647 (1988). An individual is a "statutory seller" if he: 1) "passed title, or other interest in the security, to the buyer for value," or (2) "successfully solicit[ed] the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities' owner." *Id.* at 642, 647. Section 12(a)(2) establishes "an express privity requirement, giving a cause of action only to individuals who purchase securities directly from a person who sells the securities" at issue. *Joseph v. Wiles*,

223 F.3d 1155, 1161 (10th Cir. 2000). Thus, to state a claim under § 12(a)(2), a plaintiff must plead

facts to show 1) the defendant is a "statutory seller"; 2) the "sale was effectuated by 'means of a

prospectus or oral communication'"; and 3) "the prospectus or oral communication 'include[d] an

untrue statement of a material fact or omit[ted] to state a material fact necessary in order to make

the statements, in the light of the circumstances under which they were made, not misleading.'"

*Morgan Stanley*, 592 F. 3d at 359 (quoting 15 U. S. C. § 77*l*(a)(2)).

Although a securities claim sounding in fraud must also satisfy the Fed. R. Civ. P. 9(b)

requirement that fraud be pled with particularity, Rule 9(b) scrutiny is not triggered where  a claim

arising under § 11 or § 12(a)(2) is not premised on fraud. *Schwartz v. Celestial Seasonings, Inc.*, 124

F. 3d 1246, 1252 (10th Cir. 1997). In this case, Lead Plaintiffs expressly state in the Amended

Complaint that their claims are not based on fraud.  Accordingly, the allegations need not comply

with Rule 9(b).  Nonetheless, the *Twombly* requirements remain applicable, "requiring the Plaintiffs

to state non-conclusory facts from which it can plausibly be inferred that the Plaintiffs state a valid

claim."  *In re Thornburg Mortgage, Inc. Securities Litigation*, 683 F. Supp. 2d 1236, 1255 (D. N.

M. 2010) (citing *Robbins*, 519 F. 3d at 1247-49).

B. Lead Plaintiffs' allegations:

 Lead Plaintiffs assert causes of action based on alleged material misrepresentations in

connection with the May 13, 2009 and October 22, 2009 secondary offerings of GMX common

stock.   In the May 2009 offering, GMX sold 5,750,000 shares of its common stock at a price of

$12.00 per share. The October 2009 offering consisted of the sale of 6,950,000 shares of GMX

common stock at a price of $15.00 per share.  Lead Plaintiffs Northumberland County Retirement

System ("Northumberland") and Oklahoma Law Enforcement Retirement System ("OLERS") did

not purchase shares of stock directly in the two offerings.  Instead, they allege that each purchased GMX stock which was traceable to the May 2009 offering and that OLERS purchased stock traceable to both the May and October offerings. Amended Complaint ¶¶ 15.  The amount of shares purchased is not identified, nor do Lead Plaintiffs allege facts to show from whom their GMX stock was acquired.

Lead Plaintiffs allege that the offering materials related to the May and October 2009 offerings contained misrepresentations of fact.  The May 2009 offering was preceded by a prospectus filed with the Securities Exchange Commission ("SEC") on June 25, 2008, and a supplement to that prospectus was filed on May 14, 2009.  The May 2009 offering materials incorporated by reference materials which included GMX's 2007 Annual Report and its consolidated financial statements for 2006, 2007 and 2008.  The October 2009 offering was also preceded by a prospectus filed with the SEC on June 25, 2008 and a supplement thereto filed on October 26, 2009.  The prospectus and supplemental prospectus for the October 2009 offering also incorporated by reference materials which included GMX's consolidated financial statements for 2006, 2007, and 2008, along with the GMX Annual Report, submitted on SEC Form 10-K, for the fiscal year ending  March 14, 2008.

The offering materials and incorporated Annual Report and financial statements reflected that GMX had a net loss of $82.9 million for the year ending December 31, 2008.  The materials also represented that the financial statements and related information "present fairly, in all material respects, the financial position" of GMX at the relevant time.  The materials also explained that the financial statements were audited by a registered public accounting firm, Defendant Smith, Carney & Co., P.C., ("Smith Carney").  Also included in the materials for both offerings was a detailed

explanation stating that GMX had evaluated its internal controls over financial reporting, explaining

that it had performed the system and process evaluation and testing required to comply with the

management certification and auditor attestation requirements of Section 404 of the Sarbanes-Oxley

Act of 2002.  GMX disclosed that it had not identified control deficiencies under applicable SEC

rules and regulations that remained unremediated at the time.

Lead Plaintiffs allege that the information regarding GMX's financial position as well as its

internal financial controls and auditing procedures were untrue and constitute material

misrepresentations in the offering materials for both the May and October 2009 offerings.  This

allegation is based on the fact that, on March 11, 2010, GMX issued a press release in which it

announced the restatement of its earnings in 2008 and the first three quarters of 2009.  According

to GMX, the restatement resulted from its determination that certain methods utilized in preparing

its previous financial statements were incorrect.

On March 12, 2010, GMX filed a Form 8-K with the SEC, noting the restatement and the

reasons therefor.  *See* Exhibit 2 to motion to dismiss of GMX and the individual defendants.

Specifically, GMX noted that the method used to record its "full cost pool impairment charges, other

impairment charges and related deferred income taxes" in the fourth quarter of 2008 and the first

and second quarters of 2009 were incorrect.  GMX Ex. 2.  It also noted errors in the previous

computation of "the diluted loss per share for 2008 and the first three quarters of 2009."  *Id.*  The

March 12, 2010 Form 8-K explains that the errors resulted from "a failure to account for the effects

of deferred income taxes or deferred income tax benefits on the impairment charges."  *Id.* at p. 2.

According to GMX, in October 2009, the SEC issued additional guidance regarding the proper

methodology for this calculation, and GMX learned that its prior methodology was incorrect.  As

a result, GMX was restating its financial statements for the time period in question, and advised that the restatements would be reflected in its Form 10-K for the year ending December 31, 2009. *Id.*

GMX publicly disclosed, in the March 11, 2010 press release, that the adjustments made resulted in a restated loss for the year ending December 31, 2008 of $124.6 million as compared to the originally reported net loss of $81.7 million.  The restated financial information and the reasons for the adjustments were reported in detail in GMX's March 16, 2010 Form 10-K filed with the SEC, a copy of which is submitted as GMX Ex. 4.

Lead Plaintiffs' Section 11 and 12(a)(2) claims do not assert that the offering materials omitted material facts.  Instead, they argue that inclusion of the incorrect financial information noted above constituted a misrepresentation of facts material to potential investors' decisions regarding whether to purchase the GMX stock.

C. Movants' contentions:

In support of their motion to dismiss, the movants[3] argue that: 1)  Lead Plaintiffs have failed to allege facts sufficient to show they have statutory standing to pursue their Section 11 and Section 12(a)(2) claims; 2) they have failed to allege facts sufficient to state a plausible claim for relief on these claims; and 3) they have failed to allege facts sufficient to show that they suffered damages caused by the alleged misrepresentations in the offering materials.

With respect to the challenge to standing, the absence of statutory standing to pursue claims under federal securities law may properly be asserted in a Fed. R. Civ. P. 12(b)(6) motion.  "'Unlike a dismissal for lack of constitutional standing, which should be granted under Rule 12(b)(1), a

---

[3]These arguments are asserted in all three motions to dismiss.  Defendant Smith Carney asserts an additional argument limited only to the claims against it, and that contention is discussed, *infra.*

dismissal for lack of prudential or statutory standing is properly granted under Rule 12(b)(6).'" *Genesee County Employees' Retirement System v. Thornburg Mortgage Securities*, 825 F.Supp. 2d 1082, 1212 (D.N.M. 2011) (quoting *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n. 2 (5th Cir.2011)).

Standing to pursue a claim arising under Section 11 of the 1933 Act requires that the plaintiff is a person "acquiring" a security which he claims was issued pursuant to a materially false registration statement, if the plaintiff was not aware of the false statement at the time. *In re Suprema Specialties, Inc. Securities Litigation,* 438 F.3d 256, 274 n. 7 (3d Cir. 2006) (citing 15 U. S. C. § 77k(a)). Section 11 has been held to confer standing on an aftermarket purchaser, if the purchaser can trace his acquisition to the allegedly false registration statement. *Joseph v. Wiles*, 223 F.3d 1155, 1159 (10th Cir. 2000). According to the Tenth Circuit, "an aftermarket purchaser has standing to pursue a claim under section 11 so long as he can prove the securities he brought were those sold in an offering covered by the false registration statement." *Id.*

As a general rule, statutory standing is sufficiently pled where the plaintiff alleges that he purchased stock "in" the offering or "pursuant to" the offering, or that his purchase is "traceable to" the subject offering. *In re Suprema Specialties*, 438 F.3d at 274 n. 7. "The pleading requirement for Section 11 standing is satisfied by general allegations that plaintiff purchased pursuant to or traceable to" an allegedly false registration statement." *In re Wachovia Equity Sec. Litig.*, 753 F.Supp. 2d 326, 373 (S.D.N.Y. 2011). While "'plaintiffs need not *prove* their shares are traceable to a false or misleading registration statement at this early stage of the litigation, they must *allege* it.'" *In re Suprema Specialties*, 438 F.3d at 274 n. 7 (quoting *Shapiro v. UJB Financial Corp.*, 964 F.2d 272, 286 (3d Cir. 1992) (emphasis added)). With respect to a Section 11 claim, "the pleading

requirement is not elaborate," as plaintiffs are not "required to explain how their shares can be traced; general allegations that plaintiff purchased 'pursuant to' or traceable to [a] false registration statement have been held sufficient to state a claim." *Perry v. Duoyuan Printing, Inc.*, 2013 WL 4505199, at *10 (S.D.N.Y. Aug. 22, 2013) (unpublished) (quoting *In re Global Crossing, Ltd. Sec. Litig.*, 313 F.Supp.2d 189, 208 (S.D.N.Y. 2003)).

In this case, Lead Plaintiffs have alleged that they acquired GMX securities "pursuant to or traceable to the Offering Materials issued in connection with the Company's May 2009 Offering and October 2009 Offering." Amended Complaint at ¶ 72. The Court agrees that, according to the applicable authorities, this allegation is sufficient to satisfy the pleading requirements for standing to assert a Section 11 claim. Although the movants contend that the Amended Complaint contains only conclusory allegations that the purchases were pursuant to or traceable to the offering, the Court finds that the allegations are sufficient to place all defendants on notice of the basis of Lead Plaintiffs' claims. Whether Lead Plaintiffs can prove those allegations is a matter that involves consideration of the merits of the claims rather than the sufficiency of the pleadings and should not normally be considered at this stage of the litigation. *See, e.g., Genesee County,* 825 F.Supp. 2d at 1212.

As the movants point out, standing to assert a Section 12(a)(2) claim differs from Section 11 standing because Section 12(a)(2) extends liability only to statutory sellers, and a plaintiff must plead and prove that he acquired the securities from a person or entity satisfying the definition of a statutory seller. *Pinter,* 486 U. S. at 643-647. An individual is a "statutory seller" if he: 1) "passed title, or other interest in the security, to the buyer for value," or (2) "successfully solicit[ed] the purchase, motivated at least in part by a desire to serve his own financial interests or those of the

11

securities' owner."  *Id.* at 642, 647.

In this case, Lead Plaintiffs assert a Section 12(a)(2) claim against both GMX and the underwriter defendants.  Because GMX has now been dismissed from this action, the Court will address the sufficiency of the Section 12(a)(2) claim only as to the underwriter defendants.

The underwriter defendants argue that the Amended Complaint fails to allege facts sufficient to show that Lead Plaintiffs have standing to assert the Section 12(a)(2) claim against them and contains only conclusory allegations.  Lead Plaintiffs argue in response that the underwriters qualify as statutory sellers and that they have alleged sufficient facts to show their acquisition of the GMX securities occurred under circumstances which satisfy the standing requirement of Section 12(a)(2).

Underwriters have been held to qualify as statutory sellers for Section 12(a)(2) purposes where they "passed title or other interest in the security to the buyer for value" or they "successfully solicited the purchase of a security, motivated at least in part by a desire to serve" their "own financial interests or those of the securities' owner."  *Pinter*, 486 U.S. at 642; *see also Commercial Union Assur. Co. v. Milken*, 17 F.3d 608, 616 (2d Cir. 1994).  Thus, "those who solicit sales in question for financial gain will be liable as statutory sellers under Section 12."  *Perry*, 2013 WL 4505199, at *12 (citing *Commercial Union*, 17 F.3d at 616).

Courts examining allegations against underwriters for Section 12(a)(2) standing requirements have held that a plaintiff need not identify the specific underwriter from whom he purchased the security.  *Id.* (citing *In re Worldcom, Inc. Securities Litigation*, 294 F.Supp. 2d 392, 423 (S.D.N.Y. 2003)).  Plaintiffs satisfy the pleading requirements by alleging that underwriters solicited, sold and distributed a specific number of certificates on specific dates and did so for their own personal gain.  *In re IndyMac Mortgage-Backed Sec. Litig.*, 718 F.Supp. 2d 495, 502 (S.D.N.Y. 2010).  Similarly,

allegations were found sufficient where the plaintiff alleged that the underwriter sold a specific number of shares, received financial gain as a result, "controlled the contents and dissemination of the Registration Statement and Prospectus, and offered to engage in transactions to stabilize, maintain or otherwise affect the price of the common shares during and after the offering." *Perry*, 2013 WL 4505199, at *12.

A review of court decisions addressing the sufficiency of Section 12(a)(2) standing allegations against underwriters reflects that there are no precise factual allegations that must be included.  The factual contentions must show that the underwriters were involved in solicitation and sale for financial gain.

In this case, Lead Plaintiffs' allegations identify each underwriter involved in each of the two offerings, and the number of shares applicable to each is identified on a chart.  Amended Complaint at ¶¶ 35, 41.    While a specific amount of money gained from each as a result of the sale is not alleged, the Court finds the allegations in the Amended Complaint sufficient to allege that each received financial gain from its participation in one or both offerings. An underwriter having substantial involvement in the offering process may satisfy the requirement of solicitation required to qualify as a statutory seller.  *Capri v. Murphy*, 856 F.2d 473, 478 (2d Cir. 1988).    Furthermore, as Lead Plaintiffs argue, courts have held that, in a "firm commitment offering" in which the underwriters purchase shares from the issuing company and then sell them to the public, the underwriters are statutory sellers.  In a firm commitment offering, "[a] direct sale to public investors makes an underwriter a 'seller' within the meaning of Section 12(a)(2)."  *In re American Bank Note Holographics, Inc. Sec. Litig.*, 93 F.Supp. 2d 424, 439 (S.D.N.Y 2000); *see also In re Kosmos Energy Ltd. Sec. Litig.*, __F.Supp.2d ___, 2013 WL 3196437, at *8, *11 (N.D. Tex. June 24, 2013).

The movants in this case do not dispute that the offerings in question were firm commitment offerings.  The Court concludes that the allegations are sufficient to assert that the underwriters are statutory sellers for Section 12(a)(2) purposes.

Having concluded that Lead Plaintiffs' allegations are sufficient to plead standing to assert both Section 11 and Section 12(a)(2) claims, the Court next addresses the movants' argument that the allegations are insufficient to establish the requisite element of materiality and that they fail to show any loss or damage that could have been incurred.

"A statement is material only if 'a reasonable investor would consider it important in determining whether to buy or sell stock.'" *McDonald v. Kinder-Morgan, Inc.,* 287 F.3d 992, 998 (10th Cir. 2002) (quoting *Grossman v. Novell*, 120 F.3d 1112, 1119 (10th Cir. 1997)).  "Materiality also depends on the information that already exists in the market."  *Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190, 1197 (10th Cir. 2013).

 Whether information is material depends on other information available to potential investors and, "unless the statement significantly altered the total mix of information available, it will not be considered material."  *TSC Indus., Inc*. *v. Northway, Inc.*, 426 U.S. 438, 449 (1976).  The issue of materiality "may be characterized as a mixed question of law and fact," and the determination "requires delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of those inferences to him, and these assessments are peculiarly ones for the trier of fact."  *Id.* at 450.  However, dismissal is appropriate, "'where the alleged misstatements of omissions are plainly immaterial.'" *Slater*, 719 F.3d at 1197 (quoting *Grossman v. Novell*, 120 F.3d 1112, 1118 (10th Cir. 1997)).

Issuers are generally held liable for material misrepresentations under a strict liability

standard, and may thus be liable even for innocent misstatements, and even if they exercised due diligence. *Hutchison v. CBRE Realty Finance, Inc.*, 638 F.Supp. 2d 265, 273 (D. Conn. 2009) (citing *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983)). Thus, "'to make out a prima facie case at the pleadings stage, Plaintiffs need only allege a material misstatement or omission. Neither knowledge nor reason to know is an element in a plaintiff's prima facie case.'" *Id.* (quoting *Degulis v. LXR Biotechnology, Inc.*, 1997 WL 20832, at *3 (S.D.N.Y. Jan. 21, 1997) (unpublished)).

The Amended Complaint alleges in substantial detail the facts set out in the offering materials and Lead Plaintiffs' basis for contending that those materials contained factual misrepresentations because of the admitted errors resulting from the methodology utilized by GMX and its accountants in preparing the previous financial statements and related financial disclosures.

However, the movants argue in considerable detail that, under the circumstances, the revised statement reflecting GMX's actual financial condition at the time of the offering does not establish an actionable misrepresentation in the offering materials because the incorrect information could not have been material to the investors' decisions to purchase the stock. Nevertheless, the Court cannot conclude at this stage that the alleged misrepresentations were immaterial as a matter of law. Instead, the issue of materiality presents a factual question to be determined at a later stage of this litigation.

With respect to the contention that the Amended Complaint fails to allege facts to show the purported loss or damage sustained by Lead Plaintiffs, the Court also finds the motion must be denied. To state a claim pursuant to Sections 11 or 12, a plaintiff need only allege a materially false or misleading statement or omission, as both sections "impose[] strict liability for misrepresentations" contained in a registration statement or prospectus, and any "decline in value

15

is presumed to be caused by the misrepresentation." *In re Dynegy, Inc. Sec. Litig.*, 226 F.R.D. 263, 283 (S.D. Tex. 2005); *In re SemGroup,* 729 F.Supp. 2d at 1305.  Sections 11 and 12(a)(2) "do not require a plaintiff to plead or prove loss causation." *United Food and Commercial Workers Union v. Chesapeake Energy Corp.*, 2010 WL 3527596, at * 6 (W.D. Okla. Sept. 2, 2010) (unpublished) (citing *Freeland v. Iridium World Communications, Ltd.*, 233 F.R.D. 40, 47 (D.D.C. 2006).  To the extent that the movants assert a negative causation defense, the factual basis for that assertion presents a dispute that can not normally be resolved at the pleading stage.

Accordingly, the Court concludes that the motions to dismiss the Section 11 and 12(a)(2) claims against all defendants must be denied.

In addition to adopting the arguments of the other movants, Smith Carney asserts an additional argument to support dismissal of the Section 11 claim against it.  It contends that, under Oklahoma law, Lead Plaintiffs are required to attach a written opinion of a qualified expert in order to state a claim for professional negligence against Smith Carney as a certified public accounting firm.  *See* Okla. Stat. tit. 12, § 19.  There is no affidavit attached to the Amended Complaint, and Smith Carney argues that the absence of the same renders the allegations against it subject to dismissal.

In response, Lead Plaintiffs note that, contrary to Smith Carney's argument, the claim asserted against it is based on federal securities law.  This is not a case in which subject matter jurisdiction is based on diversity of citizenship.  Instead, jurisdiction is based on the existence of a federal question arising under federal securities law.  As Lead Plaintiffs argue, the issue of negligence is presented against Smith Carney only because it is not a statutory seller, and its liability for the alleged misrepresentations is premised on 15 U. S. C. § 77k(a), which subjects an accountant

to suit to the extent he is named as "having prepared or certified any part of the registration statement," or other documents presented in connection with the registration statement. 15 U. S. C. § 77k(a)(4). As Lead Plaintiffs argue, they are not asserting a professional negligence or malpractice claim against Smith Carney under Oklahoma law.

The Court agrees that the requirements of Oklahoma law in professional negligence claims are not triggered by Lead Plaintiffs' Section 11 claim against Smith Carney. Accordingly, its contention does not support dismissal.

D. Count III allegation against Kenworthy and Merrill pursuant to Section 15 of the 1933 Act:

In addition to joining in the movants' arguments discussed above, Kenworthy and Merrill also seek dismissal of Lead Plaintiffs' third claim for relief, which seeks to hold them liable as control persons pursuant to Section 15 of the 1933 Act.

 "To state a claim based on a control person theory, a plaintiff must allege a primary violation of Sections 11 or 12(a)(2) and actual control over the primary violator by the defendants. Control is defined as 'the power to direct or cause the direction of the management and policies of [the primary violators], whether through the ownership of voting securities, by contract, or otherwise.'" *City of Westland Police and Fire Retirement System v. MetLife, Inc.*, __F.Supp. 2d__, 2013 WL 775434, at \*10 (S.D.N.Y. Feb. 28, 2013)(quoting *In re Lehman Bros. Mortgage-Backed Securities Litig.*, 650 F.3d 167, 185 (2d Cir. 2011)). "Neither director status nor mere membership on an audit committee, standing alone, is sufficient to demonstrate actual control over a company or an allegedly fraudulent transaction." *Id*. "Directors and officers who sign registration statements or other SEC filings are presumed to control those who draft those documents." *Id.* (citing *In re Alstom SA*, 406 F.Supp. 2d 433, 487-88 (S.D.N.Y. 2009)). "[W]here a plaintiff alleges that the

17

directors and officers participated in the alleged primary conduct, that is sufficient to state a claim for control person liability." *City of Westland*, 2013 WL 775434, at *10 (citing *Emps. Retirement Sys. of the Gov. of the V.I. v. J.P. Morgan Chase & Co.*, 804 F.Supp. 2d 141, 157 (S.D.N.Y. 2011)).

The Court has determined that Lead Plaintiffs have adequately alleged violations of Sections 11 and 12(a)(2) of the 1933 Act.   Thus, the requirement of a primary violation is satisfied. Accordingly, the issue is whether Lead Plaintiffs have adequately alleged that Kenworthy and Merrill  exercised actual control over GMX.

Lead Plaintiffs allege that, at all times relevant to their claims, Kenworthy was GMX's President and Chief Executive Officer, and he was Chairman of its Board of Directors.   Amended Complaint at ¶ 18.   They allege that, at all relevant times, Merrill was Chief Financial Officer of GMX.   *Id.* at ¶ 19.   Lead Plaintiffs also allege that, as a result of their respective positions, Kenworthy and Merrill had power and influence and exercised the same to cause GMX to engage in the acts on which the asserted claims are based and were controlling persons of GMX within the meaning of Section 15.   *Id.* at ¶¶ 80,81.   Although Lead Plaintiffs do not expressly allege that Kenworthy and Merrill executed the offering materials for the May and October 2009 offerings, the SEC filings, including Forms 8-K and 10-K, incorporated by reference in each prospectus and supplemental prospectus for the two offerings,  were all executed by Kenworthy and Merrill in their respective capacities.   *See, e.g.,* Exs.  6-10 to motion of GMX and the individual defendants.   As noted, *supra*, the Court may take judicial notice of the contents of SEC filings when considering a motion to dismiss a securities action.   *See  In re Morgan Stanley*, 592 F.3d at 355 n. 5.

The Court concludes that Lead Plaintiffs have adequately plead facts to state a plausible claim for Section 15 relief against Kenworthy and Merrill as control persons of GMX.   Accordingly,

the motion to dismiss on that basis must be denied.

IV.  Conclusion:

      For the foregoing reasons, the Court denies the motions to dismiss [Doc. Nos. 115, 116 and 117] filed by the defendants in this action.  Defendants are directed to file their answers according to the deadlines set out in the Federal Rules of Civil Procedure and the Local Civil Rules.

      IT IS SO ORDERED this 16th day of September, 2013.

                                       _____

                                       TIMOTHY D. DeGIUSTI
                                       UNITED STATES DISTRICT JUDGE