**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| NORTHUMBERLAND COUNTY | ) | |
| RETIREMENT SYSTEM and OKLAHOMA | ) | |
| LAW ENFORCEMENT RETIREMENT SYSTEM, | ) | |
| Individually and On Behalf of All Others Similarly | ) | |
| Situated, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. CIV-11-520-D |
| | ) | |
| v. | ) | |
| | ) | |
| GMX RESOURCES INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR
APPROVAL OF ATTORNEYS' FEES AND LITIGATION EXPENSES**

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ........................................................................................1

II.  SUMMARY OF THE ARGUMENT ..................................................................2

III. FACTUAL AND PROCEDURAL SUMMARY .................................................5

IV.  ARGUMENT.............................................................................................5

    A.  The Fee Request is Fair and Reasonable and Should be Approved .............6

        1.  An Award of Twenty-Five Percent (25%) is Well Within the Tenth
            Circuit's Range of Acceptable Fee Awards............................................7

        2.  The Fee Request is Consistent with Fees Awarded in Securities Class
            Actions Nationwide .................................................................................8

        3.  The Fee Request is the Market Rate for Quality Representation in
            Complex Securities Litigation ...............................................................10

        4.  Judge Layn Phillips has Declared the Fee Request is Reasonable and
            Appropriate .............................................................................................11

        5.  The *Johnson* Factors Support the Fee Request......................................12

            a.  The Amount Involved and the Results Obtained Support
                the Fee Request.........................................................................13

            b.  The Time and Labor Involved Supports the Fee Request ..........13

            c.  The Novelty and Difficulty of the Questions At Issue
                 Support the Fee Request ............................................................18

            d.  The Skill Required to Perform the Legal Services Properly,
                 and the Experience, Reputation, and Ability of the Attorneys
                Support the Fee Request ............................................................19

            e.  The Preclusion of other Employment and Time Limitations
                Imposed by the Client or the Circumstances Support the Fee
                Request ......................................................................................20

            f.  The Fee is in Line with Customary Fees ...................................21

g.  The Fact that the Fee Represents a Prearranged Fee Negotiated by Sophisticated Clients Supports the Fee Request...................22

h.  The Undesirability of the Case Supports the Fee Request .........22

i.  The Nature and Length of Class Counsel's Relationship with Class Representatives Support the Fee Request ........................23

B. Class Counsel's Out-of-Pocket Litigation Expenses Should be Reimbursed.................................................................................24

V.  CONCLUSION .....................................................................................25

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Merit Energy Co.*, No. 07-CV-00916-LTB-BNB,
  2009 U.S. Dist. LEXIS 100681 (D. Colo. Oct. 20, 2009) .........................................8, 19

*Brown v. Phillips Petroleum Co.*,
  838 F.2d 451 (10th Cir. 1988)...............................................................*passim*

*Chieftain Royalty Co. v. QEP Energy Co.*,
  No. CIV-11-212-R, Dkt. No. 182 (W.D. Okla. May 31, 2013) ......................3, 8, 19, 21

*Cimarron Pipeline Constr., Inc. v. Nat'l Council on Compensation Ins.*,
  Nos. CIV 89-822-T & CIV-1186-T,
  1993 U.S. Dist. LEXIS 19969 (W.D. Okla. June 8, 1993) ...........................................8

*CompSource Okla. v. BNY Mellon, N.A.*, No. CIV-08-469-KEW,
  2012 U.S. Dist. LEXIS 185061 (E.D. Okla. Oct. 25, 2012)...................................*passim*

*Gottlieb v. Barry*,
  43 F.3d 474 (10th Cir. 1994) ...........................................................................6, 13

*Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*,
  212 F.R.D. 400 (E.D. Wis. 2002) .....................................................................9

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)......................................................................................13

*Hicks v. Stanley*,
  No. 01 Civ. 10071 (RJH),
  2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 19, 2005) .............................................9

*Hitch Enterprises, et al. v. Cimarex Energy Co., et al.*,
  No. 5:11-cv-11-00013-W, Dkt. No. 144 (W.D. Okla. 2013) ...................................3, 22

*In re Checking Account Overdraft Litig.*,
  830 F. Supp. 2d 1330 (S.D. Fla. 2011)........................................................................17

*In re Eng'g Animation Sec. Litig.*,
  203 F.R.D. 417 (S.D. Iowa 2001)...............................................................................9

*In re King Res. Co. Sec. Litig.*,
  420 F. Supp. 610 (D. Colo. 1976)...............................................................................20

*In re OCA, Inc. Sec. & Derivative Litig.*,
 No. 05-2165, 2009 U.S. Dist. LEXIS 19210 (E.D. La. Mar. 2, 2009)...........................9

*In re Qwest Communs. Int'l, Inc.*,
 625 F. Supp. 2d 1143 (D. Colo. 2009) .......................................................................18

*In re Safety Components, Inc. Sec. Litig.*,
 166 F. Supp. 2d 72 (D.N.J. 2001) ...............................................................................9

*In re Veeco Instruments Inc. Sec. Litig.*,
 No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85554 (S.D.N.Y. Nov. 7, 2007).....9

*Johnson v. Georgia Highway Express, Inc.*,
 488 F.2d 714 (5th Cir. 1974) .............................................................................*passim*

*Lane v. Page*,
 862 F. Supp. 2d 1182 (D.N.M. 2012)..................................................................13, 18

*Millsap v. McDonnell Douglas Corp.*, No. 94-CV-633-H(M),
 2003 U.S. Dist. LEXIS 26223 (N.D. Okla. May 28, 2003)................................2, 10, 23

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
 669 F.3d 632 (5th Cir. 2012) .................................................................................7, 12

*United Food and Comm. Workers Union v. Chesapeake Energy Corp.*,
 No. CIV-09-1114-D, 2013 U.S. Dist. LEXIS 87427 (W.D. Okla. June 21, 2013).......18

*Uselton v. Commercial Lovelace Motor Freight*,
 9 F.3d 849 (10th Cir. 1993)..........................................................................................6

*Vaszlavik v. Storage Tech. Corp.*, No. 95-B-2525,
 2000 U.S. Dist. LEXIS 21140 (D. Colo. Mar. 9, 2000) ..............................8, 21, 22, 24

**STATUTES**

Fed. R. Civ. P. 23(h) .............................................................................................6, 24

**OTHER AUTHORITIES**

Manual for Complex Litigation § 14.121 (4th ed. 2004) ...........................................6

Newberg on Class Actions § 14.6 (4th ed. 2006)...................................................3, 9

## I.    INTRODUCTION

In connection with approval of the Settlement[1] in the above-captioned action (the "Litigation"), Class Representatives and Class Counsel respectfully move the Court for: (1) an award of attorneys' fees constituting twenty-five percent (25%) of the $2.7 million Settlement Amount, plus interest (the "Fee Request"); and (2) reimbursement of expenses incurred in successfully prosecuting and resolving this Litigation not to exceed $125,000, plus interest (the "Expense Request").[2] These requests—which are to be paid out of the Gross Settlement Fund—are fair and reasonable and, therefore, should be approved.

Class Counsel has obtained an excellent recovery − a $2.7 million Settlement for the benefit of the Settlement Class.  In light of the work performed by Plaintiffs' Counsel, the circumstances of this case, including the risks of further litigation, and the expenses incurred, the Fee Request and Expense Request are fair and reasonable.  These requests comport with fee and expense awards granted in similar cases and are fully appropriate under Tenth Circuit precedent.  Therefore, and for the reasons demonstrated below, Class Counsel and Class Representatives respectfully request the Court grant their Unopposed

---

[1] All capitalized terms not otherwise defined herein shall have the meanings given to them in the Stipulation and Agreement of Settlement dated March 25, 2014 (the "Stipulation"), a copy of which was attached as Exhibit 1 to Lead Plaintiffs' Memorandum of Law in Support of their Unopposed Motion to Certify the Settlement Class for Settlement Purposes, Preliminarily Approve Class Action Settlement, Approve Form and Manner of Notice and Set Date for Final Approval Hearing (Dkt. No. 137).

[2] To date, Plaintiffs' Counsel (which consists of Class Counsel and Liaison Counsel) has incurred out-of-pocket expenses of $85,577.29.  Plaintiffs' Counsel may incur additional expenses between now and the Final Approval Hearing on July 31, 2014.  As such, at the July 31, 2014 hearing, Plaintiffs' Counsel may seek reimbursement for expenses incurred after the date of this filing.

Motion for Approval of Attorneys' Fees and Litigation Expenses (the "Motion").

## II.    SUMMARY OF THE ARGUMENT

Class Representatives and Class Counsel have achieved an excellent Settlement with the Settling Defendants.  As demonstrated in Class Representatives' Unopposed Motion for Final Approval of Settlement and Memorandum in Support thereof, filed contemporaneously herewith, the terms and conditions of the Settlement are fair, reasonable and adequate and in the best interests of the Settlement Class.  *See also* Declaration of Bradley E. Beckworth and Michael K. Yarnoff on Behalf of Class Counsel ("Class Counsel Declaration") at ¶27.

For their considerable efforts in obtaining this result, Class Counsel's 25% Fee Request is both fair and reasonable.  The Settlement reached in this Litigation simply would not have been possible without Class Counsel's particular skill and diligent efforts in prosecuting the case.  As demonstrated below, the Fee Request comports with all factors examined by courts in the Tenth Circuit under the percentage of the fund method for evaluating the reasonableness of attorneys' fees.  *See Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454-55 (10th Cir. 1988).  Moreover, the Fee Request is particularly appropriate for a number of additional reasons.

First, the Fee Request is within the range of reasonable fees awarded in this District and the Tenth Circuit.  *See Brown*, 838 F.2d at 455 n.2; *Millsap v. McDonnell Douglas Corp.*, No. 94-CV-633-H(M), 2003 U.S. Dist. LEXIS 26223, at *25 (N.D. Okla. May 28, 2003).  Indeed, as Judge West recently recognized in awarding a $70 million fee from a $280 million common fund, "[a]n award of 25% is on the low end of the range of

acceptable fee awards in common fund cases, which ranges between 22% and 37%, and more in some cases." *CompSource Okla. v. BNY Mellon, N.A.*, No. CIV-08-469-KEW, 2012 U.S. Dist. LEXIS 185061, at *23 (E.D. Okla. Oct. 25, 2012); *see also Chieftain Royalty Co. v. QEP Energy Co.*, No. CIV-11-212-R, Dkt. No. 182 at *6 (W.D. Okla. May 31, 2013) (awarding a fee of $46.5 million, which represented approximately 39% of the cash portion of a $155 million settlement); *Hitch Enterprises, et al. v. Cimarex Energy Co., et al.*, No. 5:11-cv-11-00013-W, Dkt. No. 144 (W.D. Okla. 2013) (awarding a 1/3 fee of a $16.4 million settlement).

Second, the Fee Request is consistent with fees typically awarded in securities class actions.  Indeed, "[i]n the normal range of common fund recoveries in securities and antitrust suits, common fee awards fall in the 20 to 33 percent range."  Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 14.6 (4th ed. 2006); *see e.g.*, *CompSource*, 2012 U.S. Dist. LEXIS 185061, at *23.  Thus, the Fee Request of twenty-five percent (25%) comports with typical securities litigation attorneys' fees.

Third, the requested fee is at or below the market rate for the high level of representation Class Counsel provided the Settlement Class in resolving this Litigation against the Settling Defendants.  Moreover Class Representatives−sophisticated institutional investors−approved the Fee Request and still endorse it today.[3]  And, again, a 25% fee is within the range of typical attorneys' fees awarded in the Tenth Circuit and in securities litigation nationwide.  These facts illustrate that the requested fee is at or

---

[3] *See, e.g.,* Declaration of Ginger Poplin on Behalf of Oklahoma Law Enforcement Retirement System ("OLERS Declaration"), submitted herewith, at ¶¶12-14.

below the market rate for the quality representation that Class Counsel provided on behalf of the Settlement Class.

Fourth, the Honorable Layn R. Phillips, a former federal judge and highly experienced mediator who mediated the Settlement in this Litigation, has filed a declaration stating the Settlement was the result of Class Counsel's diligent efforts. *See* Declaration of Layn R. Phillips ("Phillips Declaration") (Dkt. No. 140), at ¶14.  Judge Phillips also states the Settlement is fair and reasonable and that the Fee Request is appropriate. *Id.* at ¶¶13-14.  Judge Phillips' endorsement of Class Counsel's Fee Request should be given due consideration.

Again, in addition to the above, the relevant *Johnson* factors also support the Fee Request by highlighting Class Counsel's diligent prosecution, and ultimate resolution, of this case for over three years on a contingent basis.  Put simply, the Fee Request is fully justified by the facts of this case and the law, is consistent with fee awards in similar cases, and is fair and reasonable.  As such, the Court should grant Class Counsel's requested fee of 25% from the Settlement Fund.

Class Counsel also seek reimbursement of reasonable expenses not to exceed $125,000, plus interest − the amount set forth in the Notice.[4]  To date, Plaintiffs' Counsel have advanced $85,577.29 in out-of-pocket expenses in prosecuting and resolving this

---

[4] A copy of the Notice is attached as Exhibit D to the Declaration of Josephine Bravata Concerning (A) Mailing of CAFA Notice; (B) Mailing of the Notice and Claim Form; (C) Publication of the Summary Notice; and (D) Requests for Exclusion Received to Date ("SCS Declaration") submitted herewith.

case.[5]  In addition to these expenses, Plaintiffs' Counsel may incur additional expenses between now and the Final Approval Hearing on July 31, 2014.  As such, at the hearing, Class Counsel may seek reimbursement for expenses incurred after the date of this filing. *Id.*[6]  Therefore, the Expense Request also is fair and reasonable and should be granted.

## III.    FACTUAL AND PROCEDURAL SUMMARY

The factual and procedural background of this case is well known to the Court. Additionally, the Class Counsel Declaration provides a thorough description of this background.  *See* Class Counsel Declaration at ¶¶6-14.  In the interest of brevity, Class Counsel will not recite the factual and procedural background of this Litigation again herein.  Instead, Class Counsel respectfully refer the Court to the Class Counsel Declaration, the pleadings on file, and any other matters of which the Court may take judicial notice, all of which are respectfully incorporated as if set forth fully herein.

## IV.    ARGUMENT

In their Motion, Class Representatives and Class Counsel respectfully move the Court for:   (1) attorneys' fees constituting 25% of the Settlement Fund, and (2) reimbursement of Litigation Expenses not to exceed $125,000, both amounts to be paid out of the Gross Settlement Fund.   As demonstrated below, these requests are fair, reasonable and adequate and, therefore, should be granted.

---

[5] *See* Class Counsel Declaration at ¶37.
[6] In addition, Class Counsel reserve their right to make addition expense requests following the Final Approval Hearing; however, in no event will Plaintiffs' Counsel's cumulative expense requests exceed the $125,000 stated in the Notice.

### A.     The Fee Request is Fair and Reasonable and Should be Approved

The Fee Request is fair and reasonable and should be approved.  Under Federal Rule of Civil Procedure 23(h), "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  FED. R. CIV. P. 23(h).  An award of attorneys' fees is a matter uniquely within the discretion of the trial judge, who has firsthand knowledge of the efforts of counsel and the services provided. *Brown*, 838 F.2d at 453.  As such, an award of attorneys' fees will only be reversed for abuse of discretion.  *Id.*; *Gottlieb v. Barry*, 43 F.3d 474, 486 (10th Cir. 1994).

In the Tenth Circuit, the preferred approach for determining attorneys' fees in common fund cases is the percentage of the fund method.  *CompSource Okla. v. BNY Mellon, N.A.*, No. CIV-08-469-KEW, 2012 U.S. Dist. LEXIS 185061, at *22-23 (E.D. Okla. Oct. 25, 2012); *Gottlieb*, 43 F.3d at 483 ("In our circuit . . . *Uselton* implies a preference for the percentage of the fund method.") *citing Uselton v. Commercial Lovelace Motor Freight*, 9 F.3d 849 (10th Cir. 1993).[7]  Under the percentage of the fund method, an appropriate fee is equal to a reasonable percentage of the common fund. *Brown*, 838 F.2d at 454.

When utilizing the percentage of the fund approach, the trial court must evaluate the reasonableness of the requested fee percentage by analyzing the applicable factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).  *See Brown*, 838 F.2d at 454-55 (adopting the *Johnson* factors in the Tenth Circuit).

---

[7] The MANUAL FOR COMPLEX LITIGATION § 14.121 (4th ed. 2004) also approves of the percentage of the fund method of determining attorneys' fees.

Importantly, "[a] majority of circuits recognize that trial courts have the discretion to award fees based solely on a percentage of the fund approach and are not required to conduct a lodestar analysis in common fund class actions." *See CompSource*, 2012 U.S. Dist. LEXIS 185061, at *23 (citing *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012)).

Here, the Court should use the percentage of the fund approach to award attorneys' fees. Class Counsel's Fee Request is fair and reasonable for a number of reasons in addition to the relevant *Johnson* factors. First, 25% of the Settlement Fund is within the acceptable range of reasonable fees awarded in the Tenth Circuit. Second, the Fee Request is consistent with fees awarded in similar securities actions nationwide. Third, a fee of 25% was negotiated by and is supported by two sophisticated institutional Class Representatives and is below or equal to the market rate for high-level representation in a complex class action such as this one. Fourth, mediator Judge Phillips endorses the Settlement and the Fee Request as fair and reasonable. And finally, the relevant *Johnson* factors support the Fee Request by illustrating the time, effort, and resources Class Counsel have dedicated to this Litigation, and to achieve a recovery in the face of complex legal and factual issues and serious risks and uncertainty. Therefore, the Fee Request is fair and reasonable and should be approved.

1.     **An Award of Twenty-Five Percent (25%) is Well Within the Tenth Circuit's Range of Acceptable Fee Awards**

The Fee Request is within the Tenth Circuit's range of reasonable fee awards. In *Brown*, the Tenth Circuit recognized that a typical percentage award in a common fund

case is around one-third of the recovery. 838 F.2d at 455 n.2. In general, district courts in this Circuit agree. *See, e.g.*, *Chieftain Royalty Co.*, No. CIV-11-212-R, Dkt. No. 182 at *6 (W.D. Okla. May 31, 2013) (awarding a fee of $46.5 million, which represented approximately 39% of the cash portion of a $155 million settlement, and finding that "the Tenth Circuit identified a fee range between 23.7 and 33.7 percent as reasonable based on the decisions of other courts."); *CompSource*, 2012 U.S. Dist. LEXIS 185061, at *23 ("25% is on the low end of the range of acceptable fee awards in common fund cases, which ranges between 22% and 37%, and more in some cases"); *Anderson v. Merit Energy Co.*, No. 07-CV-00916-LTB-BNB, 2009 U.S. Dist. LEXIS 100681, at *10 (D. Colo. Oct. 20, 2009) ("The customary fee to class counsel in a common fund settlement is approximately one-third of the economic benefit bestowed on the class."); *Vaszlavik v. Storage Tech. Corp.*, No. 95-B-2525, 2000 U.S. Dist. LEXIS 21140, at *9 (D. Colo. Mar. 9, 2000) ("A 30% common fund fee award is in the middle of the ordinary 20%-50% range and is presumptively reasonable."); *Cimarron Pipeline Constr., Inc. v. Nat'l Council on Compensation Ins.*, Nos. CIV 89-822-T & CIV-1186-T, 1993 U.S. Dist. LEXIS 19969, at *4 (W.D. Okla. June 8, 1993) ("Fees in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingent fee basis.").

Here, Class Counsel seek twenty-five percent (25%) of the Settlement Fund, which is well within the acceptable range of attorneys' fees awarded in the Tenth Circuit.

### 2. The Fee Request is Consistent with Fees Awarded in Securities Class Actions Nationwide

Not only is the Fee Request consistent with fee awards in this Circuit, but the Fee Request also is consistent with fees awarded in similar securities class actions by courts throughout the country.  According to *Newberg on Class Actions*, "[i]n the normal range of common fund recoveries in securities and antitrust suits, common fee awards fall in the 20 to 33 per cent range."  Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 14.6 (4th ed. 2006).  More specifically, "[i]n reported securities cases involving funds in the $5 million to $10 million range, attorneys' fee awards are generally within the 25 to 33 1/3 per cent range."  *In re OCA, Inc. Sec. & Derivative Litig.*, No. 05-2165, 2009 U.S. Dist. LEXIS 19210, at *62-63 (E.D. La. Mar. 2, 2009) *citing In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85554, at *4 (S.D.N.Y. Nov. 7, 2007) (30% of $ 5.5 million fund); *Hicks v. Stanley*, No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *9 (S.D.N.Y. Oct. 19, 2005) (30% of $10 million); *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 412 (E.D. Wis. 2002) (30% of $10.15 million); *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 102 (D.N.J. 2001) (33 1/3% of $4.5 million); *In re Eng'g Animation Sec. Litig.*, 203 F.R.D. 417, 423 (S.D. Iowa 2001) (33 1/3% of $7.5 million); *see also CompSource*, 2012 U.S. Dist. LEXIS 185061, at *23 (awarding $70 million in attorneys' fees, which equaled 25% of the $280 million settlement fund in a securities-related class action).

Therefore, Class Counsel's Fee Request is consistent with fees awarded in other complex class actions, including securities class actions, around the nation.  Therefore, the Fee Request should be approved.

### 3.   The Fee Request is the Market Rate for Quality Representation in Complex Securities Litigation

A 25% fee represents the market rate for the quality representation provided by Class Counsel in this complex securities class action. "The market rate for Class Counsel's legal services also informs the determination of a reasonable percentage to be awarded from the common fund as attorney fees." *Millsap*, 2003 U.S. Dist. LEXIS 26223, at *26. "One measure of the market rate is any contingency agreement negotiated at the outset of the litigation, when the risk of loss still existed." *Id.*

Here, each Class Representative agreed to a contingent fee of 25% of any judgment or settlement amount obtained in this Litigation. The fact that Class Representatives negotiated the contingency agreements "when the risk of loss still existed" indicates the value Class Representatives placed on the future success of this Litigation. *Id.*; *CompSource*, 2012 U.S. Dist. LEXIS 185061, at *14-15 (finding that sophisticated class representatives agreed to the requested fee at the start of litigation, "reflecting the value the Class Representatives placed on the future success on this Action"). In addition, the contingency fee agreements reflect the quality representation Class Counsel provided to Class Representatives and the Settlement Class. Class Counsel, Nix, Patterson & Roach ("NPR") and Kessler Topaz Meltzer & Check, LLP ("KTMC") have considerable experience successfully litigating securities class actions. *See* Class Counsel Declaration at ¶34. Thus, the twenty-five percent (25%) contingency fee to which Class Representatives agreed represents the market rate for the representation the Settlement Class received in this Litigation.

10

Additionally, both Class Representatives continue to endorse the Fee Request as fair and reasonable. *See, e.g.,* OLERS Declaration at ¶¶12-14. Indeed, Mrs. Poplin, the Executive Director of OLERS, states in her declaration, "[a]s a result of Class Counsel's extensive, efficient and excellent work, I have approved Class Counsel's application for a fee award equal to twenty-five percent (25%) of the total Settlement Amount of $2.7 million." OLERS Declaration at ¶13.

Because a 25% fee represents the market rate for the representation Class Counsel have provided here—as evidenced by the contingency fee agreements negotiated at the outset of the Litigation and Class Representatives continued endorsement—the Fee Request should be approved as fair and reasonable.

### 4. Judge Layn Phillips has Declared the Fee Request is Reasonable and Appropriate

The Fee Request also is endorsed by a well-respected mediator and former federal judge, Layn Phillips, who served as a United States Attorney before being appointed as a United States District Judge for the Western District of Oklahoma. *See* Phillips Declaration at ¶4. As a federal judge, Judge Phillips presided over many trials and sat by designation on the Tenth Circuit. *Id.* Since leaving the bench, Judge Phillips has successfully mediated countless high-stakes class actions. *Id.* at ¶5. Also, Judge Phillips has been appointed Special Master in a number of complex civil actions and has received national recognition from the Center for Public Resources Institute for Dispute Resolution. *Id.*

Judge Phillips supports the Settlement and the Fee Request here.   In his Declaration, Judge Phillips states:

> Based upon my experience as a former federal judge in the Western District of Oklahoma and as a mediator, it is my opinion that a request by, and award to, Class Counsel for an attorneys' fee of 25% of the $2.7 million settlement fund, plus reimbursement of actual litigation expenses, would be reasonable and appropriate given the complexity of this matter and the significant relief obtained by Class Counsel.  It is also my opinion that a fee award in that range is in line with the amounts approved by Oklahoma federal courts as being fair and reasonable in contingent fee class action litigation such as this.

*Id.* at ¶14.  Class Counsel respectfully submit that Judge Phillips' opinion in this matter should be afforded considerable weight in support of the Fee Request.

### 5.   The *Johnson* Factors Support the Fee Request

In *Brown*, the Tenth Circuit expressly adopted twelve factors from a Fifth Circuit case, *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, to be considered when determining a reasonable fee in common fund cases.  838 F.2d at 454-55.[8]  The twelve *Johnson* factors are:  (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of

---

[8] The Fifth Circuit has now joined the majority of circuits in officially recognizing that trial courts have the discretion to award fees based solely on a percentage of the fund approach and are not required to conduct a lodestar analysis in common fund class actions.  *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012).

the professional relationship with the client; and (12) awards in similar cases.  *Id.*  The

weight assigned to each *Johnson* factor is within the court's discretion depending on the

facts and issues of the case.  *Id.* at 456; *Gottlieb*, 43 F.3d at 482 n.4.  And, "rarely are all

of the *Johnson* factors applicable; this is particularly so in a common fund situation."

*Brown*, 838 F.2d at 456.  An analysis of the relevant *Johnson* factors support the Fee

Request, as demonstrated below.

### a. The Amount Involved and the Results Obtained Support the Fee Request

The amount involved and the substantial recovery obtained here support the Fee

Request.  "Courts have consistently held that the most important factor within this

analysis is what results were obtained for the class."  *Lane v. Page*, 862 F. Supp. 2d 1182

at 1254 (D.N.M. 2012) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)); *Brown*,

838 F.2d at 456 (noting that this factor may properly be given greater weight than others

in some cases).  Here, the $2.7 million Settlement Amount is on the high end of the range

of damages estimated by the Settling Defendants.  And, in light of the risks posed by

GMX's financial circumstances—which culminated in Chapter 11 bankruptcy—the

Settlement is especially fair, adequate and reasonable.

Given the amount involved in this Litigation and the Settlement achieved for the

benefit of the Settlement Class, this *Johnson* factor supports the Fee Request.

### b. The Time and Labor Involved Supports the Fee Request

The time and labor Plaintiffs' Counsel have expended in the research,

investigation, prosecution and resolution of this Litigation fully support the Fee Request.

In the more than three years since Class Representatives filed this Litigation, the Settling Parties have engaged in extensive pleading and motion practice, analyzed and addressed bankruptcy issues, created detailed damage models, and participated in a thorough settlement process, including formal mediation, before reaching an agreement-in-principle to settle the Litigation. *See* Class Counsel Declaration at ¶13. As described below, Class Counsel have worked diligently on behalf of the Settlement Class from the outset of this Litigation.[9] Therefore, this *Johnson* factor supports the Fee Request.

As a threshold matter, Class Counsel researched and drafted their initial complaint in late 2010, and ultimately filed this Litigation against GMX and the Settling Defendants in the District Court of Oklahoma County, State of Oklahoma, on March 10, 2011. *See* Class Counsel Declaration at ¶6. Class Representatives' initial complaint asserted claims related to the secondary offerings of common stock commenced by GMX on or about July 18, 2008 (the "July 2008 Offering"), May 13, 2009 (the "May 2009 Offering"), and October 22, 2009 (the "October 2009 Offering"). On May 12, 2011, Defendants removed the lawsuit to this Court. On June 10, 2011, Class Representatives moved to remand the litigation to state court. Dkt. No. 54. While the motion to remand was pending, Defendants filed three separate motions to dismiss (*see* Dkt. Nos. 57-59); however, the parties moved to stay briefing on the motions to dismiss until after the Court ruled on the motion to remand. Dkt. No. 64. In granting the agreed stay, the Court adopted a potential schedule that accounted for the PSLRA's lead plaintiff procedure,

---

[9] Again, a more detailed description of the efforts undertaken by Class Counsel in the prosecution of this Litigation may be found in the Class Counsel Declaration.

which would likely result in mooting the motions to dismiss.  Dkt. No. 66.  On November 16, 2011, the Court denied Class Representatives' motion to remand.  Dkt. No. 69.

Following the Court's appointment of Northumberland County Retirement System and Oklahoma Law Enforcement Retirement System as Lead Plaintiffs, on August 17, 2012, the Amended Class Action Complaint (the "Complaint") was filed.  The Complaint asserted claims against GMX and the Settling Defendants on behalf of purchasers or acquirers of GMX common stock pursuant or traceable to the May 2009 Offering and the October 2009 Offering.  In particular, the Complaint asserted claims for violations of Sections 11, 12, and 15 of the Securities Act of 1933 (15 U.S.C. §§ 77k, 77l, and 77o) based on allegations that GMX and the Settling Defendants made untrue statements, material misrepresentations and/or omissions in the offering materials for the May 2009 Offering and October 2009 Offering, including without limitation, the prospectus GMX filed with the U.S. Securities and Exchange Commission (the "SEC") on June 25, 2008, the prospectus supplements GMX filed with the SEC on May 14, 2009 and October 26, 2009, and the GMX financial statements and SEC filings incorporated by reference into the prospectus and prospectus supplements.  As anticipated, the Complaint rendered moot the previously filed motions to dismiss.

On October 1, 2012, GMX and the Settling Defendants filed new motions to dismiss.  Dkt. Nos. 115-17.  These motions were hard-fought and fully briefed.  On September 16, 2013, the Court entered an order denying these motions.  Dkt. No. 133.

On April 1, 2013, GMX filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Western District of Oklahoma.  On July 17, 2013, as a result of

GMX's bankruptcy filing, the parties filed a stipulation dismissing Class Representatives' claims against GMX with prejudice.   This stipulation was the end result of Class Counsel's work and analysis regarding the impact of the bankruptcy filing on the Settlement Class' chances of recovery from the debtor.

After the Court entered its order denying the motions to dismiss, Class Representatives and the Settling Defendants agreed to begin discussing a potential settlement of the Litigation. On September 27, 2013, the Court granted the Settling Parties' Joint Motion to Stay Case Pending Mediation.  Dkt. No. 135.  On November 4, 2013, the Settling Parties engaged in an in-person mediation with Judge Phillips.   In anticipation of the mediation and at Judge Phillips' request, the Settling Parties prepared and exchanged mediation statements outlining the strengths and weaknesses of their respective cases and discussing the proper calculation of damages.  However, the Settling Parties were too far away in their respective positions to reach a compromise at the November 4th mediation.

The Settling Parties continued their negotiations following the mediation, and with Judge Phillips' continued assistance.   These negotiations culminated in the Settling Parties reaching an agreement-in-principle to settle the Litigation on November 25, 2013. According to Judge Phillips:

> It is apparent from the submissions and presentations made by Class Counsel before and during the mediation session, as well as from my numerous discussions with them, that Class Counsel performed a thorough examination of the merits of the claims in this action . . . Class Counsel performed substantial work and effort in preparing their case for mediation and in presenting their claims in such a way to produce a valuable settlement for the Class.

Phillips Declaration at ¶14.

Based upon their investigation, research and information obtained during the mediation process, Class Counsel and Class Representatives concluded that the terms and conditions of the Settlement are fair, reasonable and adequate to the Settlement Class, and in their best interests. As such, Class Representatives filed their Final Approval Motion, which is now before the Court. This Settlement simply would not have been reached without the diligent efforts and particular skill of Class Counsel.

The above description of Class Counsel's dedication of time and labor to this litigation is sufficient for the Court to determine the reasonableness of the Fee Request. A lodestar analysis would be an unnecessary waste of time and resources at this juncture. While "time and labor" is a factor to be considered, the court need not conduct a lodestar analysis to assess it. *See Brown*, 838 F.2d at 456 & n.3. Indeed, as noted above, "[a] majority of circuits recognize that trial courts. . . are not required to conduct a lodestar analysis in common fund class actions." *See CompSource*, 2012 U.S. Dist. LEXIS 185061, at *23. In fact, "[l]odestar creates an incentive to keep litigation going in order to maximize the number of hours included in the court's lodestar calculation." *See In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1362 (S.D. Fla. 2011). As such, "[t]he loadstar approach should not be imposed through the back door via a 'cross check.'" *Id*. This *Johnson* factor allows the Court to sufficiently evaluate the reasonableness of the Fee Request in light of Class Counsel's "time and labor." And, as

described in detail above, Class Counsel's time and labor undoubtedly support the Fee Request of 25% of the Settlement Fund.

### c.     The Novelty and Difficulty of the Questions At Issue Support the Fee Request

The Fee Request also is reasonable in light of the complexity of the issues raised in this securities class action.  "There are 'few simple class action cases involving securities law,' and this case is no exception."  *Lane*, 862 F. Supp. 2d at 1252-53, (quoting *In re Qwest Communs. Int'l, Inc.*, 625 F. Supp. 2d 1143, 1149 (D. Colo. 2009)). As the Court knows, this Litigation involved a number of complex and disputed questions of law and fact that placed the ultimate outcome of the Litigation in doubt.  As with any litigated case, Class Representatives would face an uncertain outcome as to liability and damages if this Litigation were to continue to trial.  And, the Settling Defendants asserted a number of significant defenses to the Settlement Class' claims that would have to be overcome if the Litigation continued to trial.  For example, this Court recently granted summary judgment in favor of defendants in an action involving claims very similar to those asserted here.  *See United Food and Comm. Workers Union v. Chesapeake Energy Corp.*, No. CIV-09-1114-D, 2013 U.S. Dist. LEXIS 87427 (W.D. Okla. June 21, 2013). That decision is now on appeal to the Tenth Circuit.  As such, the immediacy and certainty of this recovery, when considered against the very real risks of continuing to a difficult trial and appeal, clearly weigh in favor of the Settlement and, consequently, favor the Fee Request.

Stated simply, this case was complex, risky, and onerous, and it presented difficult

issues of law and fact.  But for the work of Class Counsel—which has been performed on a fully contingent basis—the Settlement Class would not have achieved this excellent recovery.  The complexity of this Litigation supports Class Counsel's Fee Request.

> **d.    The Skill Required to Perform the Legal Services Properly, and the Experience, Reputation, and Ability of the Attorneys Support the Fee Request**

As exhibited by Class Counsel's qualifications and experience as securities litigation attorneys, the skill this Litigation required supports the Fee Request.  "Class Counsel's ability to handle this class litigation properly, as well as Class Counsel's experience, reputation and abilities, are additional *Johnson* factors that should be considered in the determination of an attorneys' fee award."  *Anderson*, 2009 U.S. Dist. LEXIS 100681, at *9.  This Litigation called for considerable skill and experience, requiring investigation and mastery of complex factual circumstances, the ability to develop creative legal theories, and the skill to respond to a host of legal defenses.  To properly perform the legal services this Litigation called for, Class Counsel developed extensive knowledge of the financial industry and securities-related damages modeling.

Class Counsel also relied on their experience as class action attorneys.  Class Counsel are highly experienced in class action, commercial, *qui tam*, mass tort, securities, and other complex litigation and have successfully prosecuted and settled numerous class actions in Oklahoma.[10]  Class Counsel employed this prior experience and knowledge in

---

[10]  For example, NPR and KTMC recently served as co-lead counsel in *CompSource Okla. v. BNY Mellon, N.A.*, No. CIV-08-469-KEW, 2012 U.S. Dist. LEXIS 185061 (E.D. Okla. Oct. 25, 2012), which culminated in a $280 million settlement for the class. Further, NPR served as class counsel in *Chieftain Royalty Co. v. QEP Energy Co.*, No.

successfully litigating and resolving this Litigation.   According to Judge Phillips, an award to "Class Counsel for an attorneys' fee of 25% of the $2.7 million settlement fund, plus reimbursement of actual litigation expenses, would be reasonable and appropriate given the complexity of this matter and the significant relief obtained by Class Counsel." Phillips Declaration at ¶14.

Moreover, the quality of representation by counsel on *both* sides of this Litigation was high.   Indeed, Settling Defendants have been represented by skilled class action defense attorneys who spared no effort in the defense of their clients.  *See In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 634 (D. Colo. 1976) (also considering the reputations of defense counsel in determining the fee, as defense counsel's stature reflects the challenge faced by the plaintiffs' attorneys).  The skill and experience of the Settling Defendants' Counsel necessitated the quality representation the Settlement Class received.

Simply put, without the experience, skill, and determination displayed by all counsel involved, the Settlement simply would not have been obtained.  Therefore, this *Johnson* factor also strongly supports the Fee Request.

> ### e.   The Preclusion of other Employment and Time Limitations Imposed by the Client or the Circumstances Support the Fee Request

The Fee Request is further supported by the fact that the time and effort required to properly prosecute this Litigation precluded Class Counsel from other employment opportunities.  "Class litigation of this magnitude inherently entails significant

---

CIV-11-212-R (W.D. Okla. May 31, 2013), which resulted in a total settlement value of $155 million to the class.  *See also* firm resumes of NPR and KTMC attached to the Class Counsel Declaration as Exhibits 3 and 4, respectively.

opportunity costs." *Vaszlavik*, 2000 U.S. Dist. LEXIS 21140, at *9.  Moreover, the size and magnitude of large class actions can impose serious time limitations on the law firms representing the class.  *Id.* at *10.

Here, Class Counsel were necessarily precluded from working on other cases and pursuing otherwise available opportunities due to their dedication of time and effort to the prosecution of this Litigation.  Moreover, Class Counsel's work was entirely contingent.  Thus, Class Counsel worked on this case without receiving any compensation for their efforts for over three years.  *See* Class Counsel Declaration at ¶24. Therefore, this fourth *Johnson* factor also supports the Fee Request.

### f.    The Fee is in Line with Customary Fees

As discussed more fully in Section IV.A.1-2 above, the Fee Request of 25% of the Settlement Fund comports with customary fee awards in similar cases.  In *Brown,* the Tenth Circuit recognized that fee awards typically range up to 37%.  838 F.2d at 455 n.2. Here, the Fee Request of twenty-five percent (25%) of the Settlement Fund is less than fees routinely approved in complex class actions.  Judge Phillips states in his Declaration that the Fee Request "is in line with the amounts approved by Oklahoma federal courts as being fair and reasonable in contingent fee class action litigation such as this."  Phillips Declaration at ¶14; *see also Chieftain Royalty Co.*, No. CIV-11-212-R, Dkt. No. 182 at *6 (W.D. Okla. May 31, 2013) (awarding a fee of $46.5 million, which represented approximately 39% of the cash portion of a $155 million settlement, and finding that "the Tenth Circuit identified a fee range between 23.7 and 33.7 percent as reasonable based on the decisions of other courts."); *CompSource*, 2012 U.S. Dist. LEXIS 185061, at *23

("25% is on the low end of the range of acceptable fee awards in common fund cases, which ranges between 22% and 37%, and more in some cases"); *Hitch*, No. 5:11-cv-00013-W, Dkt. No. 144 (awarding a 1/3 fee of a $16.4 million settlement).  Therefore, this factor supports approval of the Fee Request.

> **g.     The Fact that the Fee Represents a Prearranged Fee Negotiated by Sophisticated Clients Supports the Fee Request**

As discussed above, Class Representatives negotiated and agreed to a fee of 25% at the outset of the Litigation, and this factor supports the Fee Request.  This agreed-upon fee reflects the value of this Litigation as measured when the risks and uncertainties of litigation still lay ahead.  *See CompSource*, 2012 U.S. Dist. LEXIS 185061, at *14-15. The Settlement obtained for the Settlement Class replaces these risks and uncertainties with a significant, immediate recovery.

Additionally, Class Counsel agreed to pursue this case based purely on a contingent fee basis.  *See* Class Counsel Declaration at ¶29.  If they had not been successful, Class Counsel would have received zero compensation (not to mention no reimbursement for expenses).  *Id.*  Nonetheless, Class Counsel agreed to assume the risks associated with pursuing this case and have zealously represented the Settlement Class in obtaining a substantial result.  Therefore, this *Johnson* factor also supports the Fee Request.  *See Vaszlavik*, 2000 U.S. Dist. LEXIS 21140, at *10.

> **h.     The Undesirability of the Case Supports the Fee Request**

The Fee Request is further supported by the fact that taking on this Litigation was

undesirable.  "Attorneys must have incentive to take undesirable cases in order to assure access to the courts for all people…."  *Millsap*, 2003 U.S. Dist. LEXIS 26223, at *41. Here, the prospect of long, expensive litigation was clear from the beginning, and the risk of no recovery that comes with contingent fee representation only added to the case's undesirability.  *See* Class Counsel Declaration at ¶29.  And, as noted above, this Litigation involved a number of uncertain legal and factual issues.  *See* Section IV.A.5.c., *supra.*  Additionally, Class Counsel could not have known which court this case would be removed or transferred to, if any, or whether future decisions in the Tenth Circuit would affect the outcome of the case.  Likewise, Class Counsel had no way of knowing that the primary corporate defendant, GMX, would enter bankruptcy during the pendency of this Litigation.  Simply put, but for Class Counsel's willingness to take on and remain committed to the Settlement Class' case, the Settlement Class may not have achieved any recovery at all.  Therefore, this *Johnson* factor supports the Fee Request.

> **i.**    **The Nature and Length of Class Counsel's Relationship with Class Representatives Support the Fee Request**

The nature and length of Class Counsel's relationship with Class Representatives also support the Fee Request.  For example, NPR and OLERS have a long-standing professional relationship lasting over several years.  In fact, NPR has served as OLERS' outside securities counsel for almost ten years.  And, as noted above, OLERS fully supports the Fee Request here.  In addition, Northumberland and KTMC also have a long-standing professional relationship and Northumberland has approved the Fee Request.  Therefore, this *Johnson* factor also supports the Fee Request.

In sum, the 25% Fee Request represents the market rate for the quality representation the Settlement Class received and is well within the range of reasonable fees commonly awarded in the Tenth Circuit. Class Representatives – sophisticated institutional investors – and Judge Phillips also support the Fee Request.  Moreover, the relevant *Johnson* factors support the Fee Request by shedding light on such things as the time, labor, skill, and resources Class Counsel dedicated to this Litigation; the risks involved; and the excellent result realized for the Settlement Class despite those risks. For these reasons, the Court should approve the Fee Request as fair and reasonable.

**B.    Class Counsel's Out-of-Pocket Litigation Expenses Should be Reimbursed**

Rule 23(h) also allows courts to reimburse counsel for "non-taxable costs that are authorized by law."  FED. R. CIV. P. 23(h).  "As with attorneys fees, an attorney who creates or preserves a common fund for the benefit of a class is entitled to receive reimbursement of all reasonable costs incurred…in addition to the attorney fee percentage." *Vaszlavik*, 2000 U.S. Dist. LEXIS 21140, at *11.

Class Counsel respectfully request reimbursement of Litigation Expenses that have been and may be advanced or incurred by Plaintiffs' Counsel in prosecuting and resolving this Litigation.  Class Counsel set forth in the Notice that they would seek up to $125,000 in reimbursement of expenses. However, at this time, Class Counsel is only requesting reimbursement of $85,577.29 in expenses.[11]  All of these expenses were

---

[11] For the Court's convenience, the Class Counsel Declaration includes charts summarizing and categorizing Class Counsel's expenses.  *See id.* at ¶40.  Because additional expenses may continue to be incurred through the Final Approval Hearing on

24

reasonably and necessarily incurred by Plaintiffs' Counsel, and are directly related to their prosecution and resolution of this Litigation. *See* Class Counsel Declaration at ¶37. The costs include routine expenses related to copying, court fees, postage and shipping, phone charges, legal research, and travel and transportation, as well as expenses for experts and mediation, which are typical of large, complex class actions such as this one. *Id.* All of these expenses were reasonable and critical to Class Counsel's success in achieving the Settlement and, therefore, the Expense Request should be granted. *Id.*

Therefore, Class Counsel respectfully request the Court award the Expense Request in full and award any additional amount Class Counsel may incur after the filing of this Memorandum not to exceed $125,000, which additional amount may be reimbursed to Class Counsel without further application to or order from the Court.

## V.    CONCLUSION

For the foregoing reasons, Class Representatives and Class Counsel respectfully request the Court enter an order granting approval of the Fee Request of twenty-five percent (25%) of the Settlement Fund and reimbursement of Litigation Expenses not to exceed $125,000.

---

July 31, 2014, Class Counsel specifically request reimbursement of $85,577.29 *plus* the ability to recover additional expenses up to $125,000 – the noticed amount – without further motion or order, to the extent such expenses are actually incurred. At the Final Approval Hearing, Class Counsel will provide the Court with updated charts of Plaintiffs' Counsel's actual expenses incurred.

Dated:  June 26, 2014            Respectfully submitted,

/s/ *Derrick L. Morton*
Derrick L. Morton, OBA No. 17934
morton@ntmdlaw.com
**Nelson, Terry, Morton, DeWitt,**
      **Paruolo & Wood**
3540 South Boulevard, Suite 300
Edmond, Oklahoma 73013
Telephone: (405) 705-3600
Facsimile: (405) 705-2573

*Liaison Counsel for Lead Plaintiffs*

Michael K. Yarnoff
myarnoff@ktmc.com
Jennifer L. Enck
jenck@ktmc.com
**Kessler Topaz Meltzer & Check, LLP**
280 King of Prussia Road
Radnor, PA  19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

Jeffrey J. Angelovich, OBA No. 19981
jangelovich@nixlawfirm.com
Bradley E. Beckworth, OBA No. 19982
bbeckworth@nixlawfirm.com
Susan Whatley, OBA No. 30960
susanwhatley@nixlawfirm.com
**Nix, Patterson & Roach, LLP**
205 Linda Drive
Daingerfield, TX  75638
Telephone: (903) 645-7333
Facsimile: (903) 645-4415

*Lead Counsel for Lead Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 26, 2014, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants.

Dated:  June 26, 2014                                    /s/ *Derrick L. Morton*